Jennifer Hadley Catero (#018380)
Patrick A. Tighe (#033885)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, AZ  85004-2556
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: jcatero@swlaw.com
        ptighe@swlaw.com

Edward R. McNicholas (Admitted *pro hac vice*)
Frances Faircloth (Admitted *pro hac vice*)
Christopher M. Nienhaus (Admitted *pro hac vice)*
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202.508.4600
E-Mail: edward.mcnicholas@ropesgray.com
        Fran.faircloth@ropesgray.com
        christopher.nienhaus@ropesgray.com

Andrew J. O'Connor (Admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: 617.951.7000
E-Mail: andrew.oconnor@ropesgray.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Montana Strong and Debra Yick, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LifeStance Health Group, Inc. d/b/a LifeStance, a Delaware corporation,<br><br>Defendant. | No. 2:23-cv-00682-MTL<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE**<br><br>(Assigned to Hon. Michael T. Liburdi)<br><br>**(Oral Argument Requested)** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ....................................................................................................3

I.    Plaintiffs' Federal and State Wiretap Claims ......................................4

    A.    Plaintiffs' Claims Under 18 U.S.C. § 2511(1) of the Electronic Communications Privacy Act Fail ..............................................4

        1.LifeStance Cannot Be Liable for the Alleged Interception of Communications to Which It Is a Party ......................................4

        2.Plaintiffs Fail to Allege LifeStance Committed an Independent Tortious or Criminal Act.................................................................................5

    B.    Plaintiffs' Claims Under the California Invasion of Privacy Act Fail..................................................................................10

        1.CIPA's First Clause Regarding Wire-Tapping Does Not Apply to Internet Communications ....................................................11

        2.LifeStance Cannot Be Liable for the Alleged Eavesdropping of Communications to Which It Is a Party .......................................12

        3.Any Communication of Plaintiffs' Information to Facebook via CAPI Is Not Actionable Under CIPA .........................................12

        4.Plaintiffs Fail to Sufficiently Allege That Data Was Sent, Received, or Intercepted in California.................................................................13

        5.Plaintiffs Fail to Adequately Allege LifeStance Aided or Abetted Any Wrongdoing by Facebook ........................................................14

II.   Plaintiffs' unfair competition law claims .........................................15

    A.    Plaintiffs Have Not Adequately Pled California Unfair Competition Law Claims ..........................................................15

        1.Plaintiffs Fail to Allege a Violation in California.............................15

        2.Plaintiffs Fail to Allege Actual Reliance .........................................15

        3.Plaintiffs Fail to Allege Any Actual Injury......................................16

    B.    Plaintiffs' Claims Under the Arizona Consumer Fraud Act Fail 17

        1.Plaintiffs Fail to Plead Fraud with Particularity as Required..............18

        2.Plaintiffs Fail to Allege an Underlying Sale or Advertisement of Merchandise as Required Under ACFA ...............................................21

        3.Plaintiffs Fail to Allege a Cognizable Injury ...................................22

    C.    Plaintiffs Do Not Allege Any Violation Under the New York General Business Law...............................................................23

III.  Plaintiffs' privacy claims....................................................................24

    A.    Plaintiffs Fail to Allege an Affirmative Communication of Medical Information in Violation of the California Confidentiality of Medical Information Act .......................................................24

i

1. The Data at Issue is Not "Medical Information" ...............................24

2. CMIA Allows for the Use of Contractors ...........................................26

3. CMIA Only Applied to Mental Health After January 1, 2023 ...........27

    B.     Plaintiffs' Common Law Intrusion Upon Seclusion Claim Fails .................................................................................................27

CONCLUSION ................................................................................................29

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Quicken Loans Inc.*,
No. 17-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ...................................5, 10

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
No. 19-cv-01860, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ...........................21

*Andren v. Alere, Inc.*,
207 F. Supp. 3d 1133 (S.D. Cal. 2016) .............................................................19, 20

*In re Ariz. Theranos, Inc., Litig.*,
256 F. Supp. 3d 1009 (D. Ariz. 2017) ...............................................................22, 23

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................................18

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ...................................................................................17

*Bruer v. Phillips L. Grp. PC*,
No. CV-18-01843, 2019 WL 2552060 (D. Ariz. June 20, 2019) ...........................29

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)..........................................................................................6

*Cheatham v. ADT Corp.*,
161 F. Supp. 3d 815 (D. Ariz. 2016) ..................................................................*passim*

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009) .....................................................................25

*Cohen v. Casper Sleep, Inc.*,
Nos. 17cv9325, 17cv9391, 2018 WL 3392877 (S.D.N.Y. July 12, 2018).............25

*Cousin v. Sharp Healthcare*,
No. 22-cv-2040, 2023 WL 4484441 (S.D. Cal. July 12, 2023).............................27

*Demaree v. Wal-Mart Stores, Inc.*,
511 F. App'x 660 (9th Cir. 2013) ............................................................................21

*Doe v. Perkiomen Valley Sch. Dist.*,
585 F. Supp. 3d 668 (E.D. Pa. 2022) .......................................................................11

ii

*dotStrategy Co. v. Facebook Inc.*,
    482 F. Supp. 3d 994 (N.D. Cal. 2020) ...............................................................7, 17

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 514 (S.D.N.Y. 2001) .................................................................6, 9

*Eisenhower Med. Ctr. v. Superior Ct.*,
    172 Cal. Rptr. 3d 165 (Ct. App. 2014) ...........................................................26, 28

*Emmerick v. Ridgecrest Reg'l Hosp.*,
    No. 117-cv-01160, 2018 WL 784302 (E.D. Cal. Feb. 8, 2018) ............................28

*English v. Danone N. Am. Pub. Benefit Corp.*,
    22 CV 5105, 2023 WL 4187515 (S.D.N.Y. 2023) ................................................25

*In re Facebook Privacy Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ........................................................................18

*Ferrington v. McAfee, Inc.*,
    No. 10-CV-01455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ..........................16

*Foy v. Vinson*,
    No. CV-21-02076, 2022 WL 1443761 (D. Ariz. May 6, 2022) ..............................3

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................12

*In re Google Inc. Gmail Litig.*,
    No. 13-MD-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ...............................................................................5, 6

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (N.Y. 2002) ............................................................................24, 25

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................11, 12, 13, 15

*In re Grp. Health Plan Litig.*,
    2023 WL 8850243 ...................................................................................................8

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................11

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .................................................................17, 18

*Hartley v. Univ. of Chi. Med. Ctr.*,
22-cv-5891, 2023 WL 7386060 (N.D. Ill. Mar. 3, 2023) ...................................7, 8

*Henderson v. Chase Home Fin., LLC*,
No. CV 09-2461, 2010 WL 1962530 (D. Ariz. May 14, 2010) ............................23

*Holeman v. Neils*,
803 F. Supp. 237 (D. Ariz. 1992) ........................................................................24

*Katz-Lacabe v. Oracle Am. Inc.*,
No. 22-cv-04792, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023)..............................9

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d. Cir. 2012) ............................................................................25

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .........................................................................17, 19

*Keller v. Narconon Fresh Start*,
No. 14-CV-2168, 2015 WL 1874722 (S.D. Cal. Apr. 23, 2015) ...........................10

*Kuehn v. Stanley*,
91 P.3d 346 (Ariz. Ct. App. 2004).....................................................................18, 22

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .............................................................12, 14

*London v. New Albertson's, Inc.*,
2008 WL 4492642 (S.D. Cal. Sept. 30, 2008).......................................................28

*Lorona v. Ariz. Summit L. Sch., LLC*,
188 F. Supp. 3d 927 (D. Ariz. 2016) ...................................................................20

*Maricopa County v. Off. Depot, Inc.*,
No. 14-cv-1372, 2014 WL 6611562 (D. Ariz. Nov. 21, 2014) .............................19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
440 F. Supp. 3d 447 (D. Md. 2020)......................................................................18

*Martin v. Sephora USA*,
22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ................................14

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*,
   30 F. Supp. 2d 1182 (D. Ariz. 1998) ................................................................10

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*,
   306 F.3d 806 (9th Cir. 2002) ...........................................................................29

*In Re Meta Pixel Healthcare Litig.*,
   647 F.Supp.3d 778 (N.D. Cal. Dec. 22, 2022).................................................2, 8

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ...............................................................................5

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................16

*Oman v. Delta Air Lines, Inc.*,
   889 F.3d 1075 (9th Cir. 2018) ..........................................................................16

*People v. Camba*,
   50 Cal. App. 4th 857 (Cal. Ct. App. 1996)........................................................29

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..........................................................16, 17

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ......................................................................18

*Quinalty v. FocusIT LLC*,
   No. CV-23-00207, 2024 WL 342454 (D. Ariz. Jan. 30, 2024) ...........................22

*Raup v. Wells Fargo Bank, NA*,
   No. CV-13-00137, 2013 WL 3216175 (D. Ariz. June 25, 2013) ........................23

*Razuki v. Caliber Home Loans, Inc.*,
   No. 17cv1718, 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ............................11

*Revitch v. New Moosejaw*,
   No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................13

*Rodriguez v. Google LLC*,
   20-cv-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .................................14

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ..........................................................................19

*Shepherd v. Costco Wholesale Corp.*,
441 P.3d 989 (Ariz. Ct. App. 2019), vacated in part, 482 P.3d 390 (2021) ...........30

*Skinner v. Tel-Drug, Inc.*,
No. CV-1600236, 2017 WL 1076376 (D. Ariz. Jan. 27, 2017) ............................30

*Smith v. Chase Manhattan Bank, USA, N.A.*,
741 N.Y.S.2d 100 (App. Div. 2002)..............................................................24, 26

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011) .................................................................................16

*Sussman v. American Broadcasting Cos.*,
186 F.3d 1200 (9th Cir. 1999) ...........................................................................6

*Vantage Mobility Int'l LLC v. Kersey Mobility LLC*,
No. CV-19-04684, 2020 WL 411188 (D. Ariz. Jan. 24, 2020) .............................19

*Ventures Edge Legal PLLC v. GoDaddy.com LLC*,
No. CV-15-02291, 2016 WL 3570465 (D. Ariz. July 1, 2016)..............................24

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................................14

*Weston v. Lefiti*,
2023 WL 8458249 (S.D. Cal. Dec. 5, 2023) .........................................................10

*Wilson v. Rater8, LLC*,
No. 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)..................26, 27, 28

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................................................................13

**Statutes**

A.R.S. § 44-1521 (1) ...........................................................................................22, 23

A.R.S. § 44-1521 (5) ...........................................................................................22

A.R.S. § 44-1521 (7) ...........................................................................................22

18 U.S.C. § 2511 ...........................................................................................*passim*

42 U.S.C. § 1320d-6(a)(3)...........................................................................................6, 7

42 U.S.C. § 1320d-6(A)-(B)...........................................................................................7

110, 123. Under the Wiretap Act ...................................................................4

Arizona Consumer Fraud Act § 44-1522 .............................................*passim*

Cal. Bus. & Prof. Code § 17201, *et seq.*..............................................*passim*

Cal. Penal Code § 631(a)................................................................11, 12, 13

California Confidentiality of Medical Information Act ............................26, 27, 28, 29

Health Insurance Portability and Accountability Act ...........................................*passim*

New York. Gen. Bus. Law § 349 ...................................................24, 25, 26

**Other Authorities**

American Hosp. Ass'n, *Lawsuit Challenges Federal Rule That Ties
    Providers Hands in Efforts to Reach Their Communities* (2023),
    https://www.aha.org/legal-documents/2023-11-02-lawsuit-challenges-
    federal-rule-ties-providers-hands-efforts-reach-their-communities ........................3

California Assembly Bill 2089........................................................................29

California Const., art. IV, § 8, subd. (c)(1) ................................................29

Federal Rules of Civil Procedure 9(b) ...........................................16, 19, 21

Federal Rule of Civil Procedure 12(b)(6)........................................................1

Restatement (Second) of Torts § 652B .......................................................30

U.S. Dep't of Health & Hum. Servs., *Use of Online Tracking
    Technologies by HIPAA Covered Entities and Business Associates*
    (2022), https://www.hhs.gov/hipaa/for-
    professionals/privacy/guidance/hipaa-online-tracking/index.html..........................9

Defendant LifeStance Health Group, Inc. ("LifeStance") moves under Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss Plaintiffs' First Amended Complaint (the "First Amended Complaint" or "FAC").  This Motion is supported by the following Memorandum of Points and Authorities and all other matters of record before the Court.

## INTRODUCTION[1]

Plaintiffs' entire theory of injury rests on LifeStance's use of pixels—a commonplace website analytics technology through which snippets of code gather small pieces of data for analysis (collectively with similar technologies, "pixel technologies").  As a major provider of mental health services, LifeStance uses its website to engage with the public and connect patients with providers, and these technologies enable it and other website operators to better understand how users interacted with a given site.  Plaintiffs' worries about these technologies, as made clear by its numerous amended allegations detailing the function of these technologies, FAC ¶¶ 170-199, are not a basis for legal action.

Despite Plaintiffs' arguments to the contrary, pixel technologies are not prohibited by either federal or state wiretap laws—statutes designed not to prohibit functionality inherent to the modern internet, but rather to prevent surreptitious eavesdropping on phone calls by third parties.  Moreover, wiretap laws explicitly allow parties to a communication to share information with others, unless they have an "independent" criminal or tortious purpose. But Plaintiffs' arguments that LifeStance has such purposes—based on allegations Plaintiffs' added in the FAC regarding the Health Insurance Portability and Accountability Act ("HIPAA"), invasion of privacy, and several other opaquely-framed claims—fail to allege that LifeStance committed any independent crime or tort.  In fact, courts have consistently dismissed *more detailed* allegations—even where plaintiffs had HIPAA-related worries—because they rightly recognized that wiretap statutes are not intended to punish parties for having basic website functionality.

---

[1]    Citations to "FAC" are to Plaintiffs' First Amended Class Action Complaint, Dkt No. 36. Unless indicated otherwise, internal quotation marks and citations are omitted, and emphasis is added.

1

One common shortcoming spans across many of their claims:  Plaintiffs do not allege any actionable harm resulting from LifeStance's use of pixel technologies.  Plaintiffs sought to cure this deficiency in their FAC adding many allegations concerning  the purported general value of personal health information. FAC ¶¶ 264-85.  But these allegations have nothing to do with specific harm to the Plaintiffs themselves. Even after amendment, Plaintiffs still only allege numerous vague, unquantifiable injuries without a tie to a specific harm to Plaintiffs, and no cognizable harm resulting from Defendant's legal use of pixel technologies.

Even assuming Plaintiffs could identify a cognizable injury, they cannot show that it stemmed from any alleged wrongdoing by LifeStance.  Each of Plaintiffs' claims proceeds on a theory that they were harmed when their personal health information ("PHI") was disclosed. But the only party to whom Plaintiffs' information was allegedly disclosed is Meta/Facebook,[2] which provided contracted services to LifeStance.  And even Plaintiffs must concede that Facebook would only have the real name of any particular plaintiff because Plaintiffs voluntarily provided that information to Facebook when they chose to open a Facebook account, subject to Facebook's terms and conditions. Moreover, Meta represents that it filters the data it receives from its business partners via its pixel technology to ensure that it does not receive PHI, and in the event PHI is not filtered out, Meta does not use the information.[3] Plaintiffs have alleged no facts sufficient to establish that Meta's claims are false, and even if Plaintiffs take issue with the accuracy of Meta's statements, a lawsuit against LifeStance is not the appropriate vehicle for exploring Plaintiffs' dispute with Meta.

There is nothing illegal, much less unethical or immoral, about a healthcare provider employing pixel technologies on its website or sharing it with a contracted third party under the circumstances alleged.  And although Plaintiffs, through amendment, attempt to imply

---

[2]    The First Amended Complaint refers to "Facebook" and "Meta" (Facebook's parent company) interchangeably, as does this Motion.

[3]    *See, e.g.*, *In Re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 788–89 (N.D. Cal. Dec. 22, 2022).

otherwise by citing the American Medical Association's code of ethics, FAC ¶¶ 224-26, or FTC guidelines, FAC ¶¶ 227-30, nothing in those codes or guidelines pertain to the kind of basic website interaction data which Plaintiffs allege LifeStance collects.[4] Plaintiffs' efforts to allege various unfair competition and privacy claims similarly fail to sufficiently allege wrongdoing by LifeStance—not only because of the mismatch between the facts and relevant law, but because of the simple fact that the laws in question were not meant to punish or impede the basic functionality of the internet.    Plaintiffs have been given two bites at the apple and still failed to cure the deficiencies in each of their claims. As such, the FAC should be dismissed with prejudice in its entirety. *See Foy v. Vinson*, No. CV-21-02076, 2022 WL 1443761, at *3 (D. Ariz. May 6, 2022) (dismissing amended complaint because court already granted plaintiff leave to amend once and, despite knowledge of defendant's arguments, plaintiff failed to cure the defects in his complaint).

## ARGUMENT

To assist the Court in grappling with the eight count FAC, we shall group the claims into three buckets in roughly the order presented in the Complaint. First, we will address the wiretap claims brought under federal and state law (Counts 1 and 3).  Second, we will address the unfair competition and consumer fraud claims under the laws of California, Arizona, and New York (Counts 4, 5, 6, and 7).  Third, we will address the privacy claims under a California medical privacy statute and the common law tort of intrusion upon seclusion (Counts 2 and 8).

///

///

///

---

[4]    Guidelines similar to these have been the subject of recent scrutiny as the American Hospital Association has filed a lawsuit against the United States Department of Health and Human Services ("HHS") alleging that HHS' conception of protected PHI in its December 2022 bulletin that spurred most of the recent action concerning pixels is broader than the HIPAA Privacy Rule's definition of health data. *See Lawsuit Challenges Federal Rule That Ties Providers Hands in Efforts to Reach Their Communities (2023)*, https://www.aha.org/legal-documents/2023-11-02-lawsuit-challenges-federal-rule-ties-providers-hands-efforts-reach-their-communities.

I.      **PLAINTIFFS' FEDERAL AND STATE WIRETAP CLAIMS**

    A.      **Plaintiffs' Claims Under 18 U.S.C. § 2511(1) of the Electronic Communications Privacy Act Fail**

Plaintiffs' claims for violations of 18 U.S.C. § 2511(1) of the Electronic Communications Privacy Act ("ECPA"), otherwise known as the Wiretap Act, fail from the outset because Plaintiffs expressly plead that LifeStance was a party to the communications at issue because they communicated *with* LifeStance, FAC ¶¶ 110, 123.  Under the Wiretap Act, a party to a communication *cannot* intercept—or even endeavor to intercept—that communication.  18 U.S.C. § 2511(2)(d).  The Defendant therefore could not have violated the Wiretap Act by receiving data that Plaintiffs intentionally communicated with LifeStance.

Plaintiffs attempt to overcome this basic tenant of the Wiretap Act by invoking the so-called "Crime-Tort Exception," a carveout from the general party exception which may be invoked if the Defendant obtained the communication for the purpose of committing an independent crime or tort. That argument similarly fails because Plaintiffs do not allege facts sufficient to show that LifeStance committed an independent crime or tort.

    *1.      **LifeStance Cannot Be Liable for the Alleged Interception of Communications to Which It Is a Party***

The Wiretap Act explicitly states that it is lawful for a person to intercept a communication "where such person is a party to the communication." 18 U.S.C. § 2511(2)(d).  This "Party Exception," as it is known, reflects Congress's intent to shield the intended recipients of communications from liability under the Wiretap Act. *Id.*

The FAC concedes on multiple occasions that Plaintiffs intended for LifeStance to receive the communications at issue. *See, e.g.*, FAC ¶ 82 ("Thus, the (supposedly) private communications between patients and Defendant, which are necessary to use [Defendant's] Website, are actually received by Defendant and stored on its server . . . ."); FAC ¶ 110 (similar). Accordingly, LifeStance is an intended and direct recipient and party to the communication and cannot be held liable under any subsection of 18 U.S.C. § 2511(1) of

ECPA.  *See In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 142 (3d Cir. 2015);  *Kurowski v. Rush Sys. for Health*,  2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023); *Allen v. Quicken Loans Inc.*, No. 17-12352, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018).

Courts have consistently recognized that actors who place pixel technologies like cookies on users' browsers and track users' web activities are the intended recipients of the resulting communications and therefore fall squarely within the Party Exception.[5]

Plaintiffs attempt to find a way around that exception by reviving an attack on the use of pixel technologies like cookies that failed nearly a decade ago. *See In re Google,* 806 F.3d at 142-43.  However, as the court in that case held: "As the intended recipient of a communication is necessarily one of its parties, and the defendants were the intended recipients of the [resulting communications] they acquired here, the defendants were parties to the transmissions at issue in this case." *Id.*

Aware of this precedent, Plaintiffs allege that pixel technologies employed by LifeStance "duplicate[d] and re-direct[ed] Plaintiffs' and Class Members' Private Information to Facebook and the other Pixel Information Recipients."  FAC ¶ 190.  Yet, Plaintiffs' attempt to establish this carveout to the Party Exception is entirely illogical.  Even if LifeStance duplicated a communication to which it was a party and then sent that communication to a third party like Facebook or Google, it would still be a party to those communications, and the Party Exception would still apply.

**2.     *Plaintiffs Fail to Allege LifeStance Committed an Independent Tortious or Criminal Act***

Plaintiffs further attempt to overcome the party exception by invoking the Crime-Tort Exception—a narrow exception to the Party Exception—but that gambit fails because

---

[5]     *See, e.g.*, *In re Google*, 806 F.3d at 142 (holding that Google, which placed pixel technologies on the plaintiffs' we browsers, was a party to those communications); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (holding that Viacom, the website hosting Google's pixel technology, could not be held liable for interception under ECPA for communications resulting from Google's pixel technology because it was a party to all such communications).

Plaintiffs cannot sufficiently allege any crime or tort that is independent from the alleged interception under ECPA.

The Crime-Tort Exception is applied sparingly as "legislative history and caselaw make clear that [it] is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 514, 515 (S.D.N.Y. 2001); *see also Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Invoking the Crime-Tort Exception also requires Plaintiffs to plead "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent*" from the alleged violation of ECPA. *In re Google Inc.*, 806 F.3d at 145; *see also Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010). But as with Plaintiffs' last attempt, none of their allegations concerning purported HIPAA violations, invasion of privacy, or fraud amount to anything sufficient to meet the standard required for the Crime-Tort Exception.

(a)  ***Plaintiffs Fail to Allege a HIPAA Violation***

Plaintiffs now allege in the FAC that LifeStance's conduct somehow constitutes a violation of HIPAA (specifically 42 U.S.C. § 1320d-6(a)(3)) on the grounds that "Defendant disclosed [IIHI] to third parties." FAC ¶ 393.

Plaintiffs' claim fails from the outset, as they do not sufficiently allege that IIHI was disclosed. By statutory definition, information is IIHI only if it (1) is "created or received by" a health care provider *and* (2) either "identifies the individual" or provides a reasonable basis to identify the individual. 42 U.S.C. § 1320d-6(A)-(B). Nowhere in the FAC do Plaintiffs allege that the medical information purportedly *transmitted* by the pixel technologies on LifeStance's website identifies or provides a reasonable basis to identify any individuals. Instead, Plaintiffs claim the "identifying information" comes in the form of "cookies"; that contain a Facebook ID number, not a name. FAC ¶¶ 73–74. But Plaintiffs themselves allege that *Facebook*—not LifeStance—is the entity which "*create*[*s*] [the] cookies that are stored in the User's computer" when that person voluntarily accesses

Facebook, FAC ¶¶ 73–74, and that *Facebook*—not LifeStance—then "*receives . . .* [those] cookies" via the pixel technologies.  FAC ¶¶ 74, 152 (emphasis added).  And Facebook knows that person only by the name that person provided to Facebook.  By the plain terms of § 1320d-6, because the only identifying information at issue are Facebook's cookies, which are both "created" *and* "received by" Facebook—not LifeStance—Plaintiffs fail to plead a violation of § 1320d-6(a)(3), and thus cannot establish a crime or tort for 18 U.S.C § 2511(2)(d) purposes.

Beyond this fatal flaw in Plaintiffs' argument, the case law on this topic demonstrates that Plaintiffs' allegations concerning the type of data that was allegedly transmitted fall well short of satisfying the requirements of § 1320d-6.  In *Hartley v. University of Chicago Medical Center*, the Northern District of Illinois rejected a plaintiff's attempt to invoke the Crime-Tort Exception in the pixel tracking context.  22-cv-5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023).  Although the *Hartley* plaintiff alleged similar facts to those alleged here,[6] she also alleged disclosure of "[e]very communication a patient sends on UChicago's web properties," *Hartley* Am. Compl. ¶ 42, "the specific actions [the patient] took and health procedures [the patient] underwent," *id.* ¶ 45, and "even the patient's doctor's notes." *Id.* ¶ 47.  Plaintiffs' allegations here—regarding their "search queries" and what they "clicked" on, FAC ¶ 179, as well as generalizations about health and medical information and certain identifiers which do not include any users name—fall well short of *Hartley,* where the court dismissed the plaintiff's allegations as "generalizations as to what [defendant] was communicating to Facebook [via the Pixel]." *Hartley*, 2023 WL 7386060, at *2.

The one court which has denied a motion to dismiss a plaintiff's Crime-Tort Exception argument on § 1320d-6 grounds not only involved substantially more allegations

---

[6]    The plaintiff had alleged that the defendant disclosed patients' IP addresses, "the webpages viewed by the patient," the "tabs clicked on by the patient for any action (e.g., schedule an appointment, view test results)," "cookie values, and even the patients' Facebook ID." Am. Compl. ¶ 14, *Hartley v. Univ. of Chi. Med. Ctr.*, 22-cv-5891 (N.D. Ill. Mar. 3, 2023), Dkt. No. 33 ("Hartley Am. Compl.").

than what Plaintiffs plead here,[7] but the court there noted that "unlike [courts in the Ninth Circuit]," the District of Minnesota "has not found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money." *In re Grp. Health Plan Litig.*, No. 23-cv-267, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023). Yet, courts in this circuit have held precisely that the Crime-Tort Exception *does not apply* in situations, like here, where the defendant's purpose was neither "tortious" nor "criminal," but rather monetary. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796–97 (N.D. Cal. 2022). Accordingly, Plaintiffs' alleged HIPAA violation is insufficient to invoke the Crime-Tort Exception.

(b) ***Plaintiffs Fail to Allege an Independent Invasion of Privacy Tort***

The First Amended Complaint alleges that LifeStance "intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act . . . namely invasion of privacy, among others." FAC ¶ 391. Plaintiffs' invasion of privacy claim is inherently tethered to LifeStance's alleged violation of ECPA as it is based on "[LifeStance's] disclosure of the substance and nature of those communications to third parties." FAC ¶ 481. The disclosure, and pre-requisite interception, of Plaintiffs' communications is exactly the conduct Plaintiffs allege violates ECPA. *See* FAC ¶ 389. Thus, Plaintiffs' invasion of privacy claim fails to sufficiently plead any potentially tortious or criminal conduct that is *independent* of LifeStance's alleged violation of ECPA.

And even if Plaintiffs had sufficiently alleged any independent tortious act—which they do not—they have also failed to allege any facts from which the court could infer a contemporary "insidious intent" to harm others, as required. *In re Doubleclick Priv. Litig.*,

---

[7] Namely, plaintiffs alleged that the defendants there had "routinely provided Facebook" with patients' "medical diagnoses and treatment from healthcare providers," "lab results," "medical records," and "medical bills," among other information which the plaintiffs accessed using the defendant's website. *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *2. Plaintiffs allege none of that here.

154 F. Supp. 2d at 518. The First Amended Complaint alleges LifeStance used pixel technologies to transmit data "for the purpose of financial gain." FAC ¶ 388. But that allegation defeats Plaintiffs' own argument because courts have repeatedly found that when a defendant's purpose is to "make money" the Crime-Tort Exception *does not apply*. *See In re Doubleclick Priv. Litig.*, 154 F. Supp. 2d at 519; *see also Katz-Lacabe v. Oracle Am. Inc.*, No. 22-cv-04792, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (same); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (same).[8]

### (c) *Plaintiffs' Other Ambiguous Allegations Are Also Insufficient To Invoke the Crime-Tort Exception*

Having failed to sufficiently allege any independent tort or crime which could invoke the Crime-Tort Exception, Plaintiffs seemingly allege a variety of generalized issues as a last-ditch attempt to invoke the Exception. But they do not sufficiently allege any *actual* purported crimes or torts which could support the Exception. And "bare assertion[s]" or "recitation[s] of the name of the torts" are insufficient to show the requisite "independent or tortious purposes" required by § 2511(2)(d). *Weston v. Lefiti*, 2023 WL 8458249, at *4 (S.D. Cal. Dec. 5, 2023) (citation omitted).

*First*, Plaintiffs allege what can best be understood as fraud-like arguments, claiming that LifeStance engaged in "deceit" and a "scheme . . . to defraud" through the use of pixel technologies. FAC ¶¶ 399–401. This is not nearly enough to allege a fraud claim. But even in cases where plaintiffs *have* "adequately pled their fraud claim", courts in this circuit have held that they had nonetheless failed to "allege that [d]efendants recorded calls *for the purpose of committing a criminal or tortious act*," and thus could not invoke the § 2511(2)(d) Crime-Tort Exception. *E.g.*, *Keller v. Narconon Fresh Start*, No. 14-CV-2168,

---

[8]    As the Office for Civil Rights within the Department of Health and Human Services explicitly recognizes, providers are permitted to share PHI using pixel technologies so long as the PHI is not being used for an unauthorized purpose. U.S. Dep't of Health & Hum. Servs., *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

2015 WL 1874722, at *5-6 (S.D. Cal. Apr. 23, 2015) (emphasis added).  Even so, the conduct which Plaintiffs allege shows a "scheme" to "defraud" is also insufficient to warrant the Exception.  *See, e.g.*, *Allen,* 2018 WL 5874088, at *2 (rejecting plaintiff's argument that defendant's "privacy policy" was "false and/or misleading" due to data shared with third parties for marketing purposes and finding no Crime-Tort Exception).  And to the extent that Plaintiffs also attempt to invoke some kind of quasi-property tort (discussing "intent to defraud" in the context of "willfully invad[ing] and t[aking] . . . property," FAC ¶¶ 401-02), that claim also fails where, like here, Plaintiffs "offer nothing to support this claim other than a summary of the same arguments for liabilities for the underlying torts." *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 30 F. Supp. 2d 1182, 1205 (D. Ariz. 1998).  That principle holds true even where "intrusion, fraud, trespass, and tortious interference" are the alleged purpose of a § 2511 violation.  *Id.*

*Second*, Plaintiffs allude to generalized breached duties, FAC ¶ 38, but fail to specify what those duties are—much less what *independent* torts or crimes were committed as a result of the breach of those unspecified duties, as they must allege.  *Supra* at Section I.A.2.a.  The mere "recit[ation of] a few buzz words with the hope that [plaintiff] may be able to figure out later what, if anything, [the defendant] has done wrong" is wholly insufficient to allege a claim.  *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718, 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018). Accordingly, Plaintiffs' claims that there are general "failures" by LifeStance, implying (but not clearly stating) breaches of unknown duties, are hardly enough to invoke the Crime-Tort Exception—much less allege a specific cause of action.[9]

### B.    Plaintiffs' Claims Under the California Invasion of Privacy Act Fail

Plaintiffs similarly allege that LifeStance violated California's wiretap statute,

---

[9]    To the extent Plaintiffs raise new allegations about the "violation" of "[i]ndustry [s]tandards" and "guidelines," FAC ¶ 223–30, these are also insufficient to invoke the Crime-Tort Exception because "guidelines or recommendations of agencies and associations do not set the standard of liability." *Doe v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 690 n.49 (E.D. Pa. 2022) (citing *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979)).

Section 631(a) of the California Invasion of Privacy Act ("CIPA"). *See* FAC ¶¶ 350-54. While the text of CIPA defines eavesdropping as intentionally tapping a communication without the consent of "all parties," Cal. Penal Code § 631(a), courts recognize that "the analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). Accordingly, courts have instituted a party exception to CIPA identical to that under ECPA. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831–32 (N.D. Cal. 2021). CIPA also has the additional requirement that the data at issue must be sent or received in California and certain prohibitions do not apply to internet communications. Cal. Penal Code § 631(a). Like Plaintiffs' Wiretap Act claims, Plaintiffs' CIPA claim fails on multiple fronts.

### 1. *CIPA's First Clause Regarding Wire-Tapping Does Not Apply to Internet Communications*

Plaintiffs allege that the pixel technologies, Plaintiffs' browsers, computers, and mobile devices, and Facebook's servers all constitute "machine[s], instrument[s], or contrivance[s] under the CIPA." FAC ¶ 355(a)-(g). Yet, "[c]ourts have consistently interpreted this clause as applying only to communications over *telephones* and not through the internet." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1079 (C.D. Cal. 2023) (citation omitted); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020).

Recently, in *Licea*, the U.S. District Court for the Central District of California re-affirmed this holding and clarified that Section 631(a) does not apply to "communications with a smart phone or Wi-Fi-enabled laptop." *Id.* at 1081. Recognizing that "California law of statutory interpretation 'begins with the words themselves . . . because the words generally provide the most reliable indicator of [legislative] intent,'" *id.* at 1080 (quoting *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020), the *Licea* court determined that the first clause of Section 631(a) applies only to telephone wires, lines, or cables, *id.* . Thus, Plaintiffs' attempt to broaden the meaning of Section 631(a) to include pixel technologies, browsers, smart phones, and servers is unpersuasive and contrary to the

California Legislature's intent and well-settled caselaw.

### 2. *LifeStance Cannot Be Liable for the Alleged Eavesdropping of Communications to Which It Is a Party*

To the extent Plaintiffs allege LifeStance is liable for eavesdropping under CIPA, any such claim fails as a matter of law. "Under section 631(a), if a person secretly listens to another's conversation, the person is liable. Only a third party can listen to a conversation secretly. By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham.*, 533 F. Supp. 3d at 831; *Licea*, 659 F. Supp. 3d at 1081.

As detailed above in Section I.A, for purposes of the ECPA, LifeStance was an original intended recipient of the communications from Plaintiffs and is therefore a party to those communications. As a party, LifeStance cannot eavesdrop on its own communications and therefore cannot be liable for eavesdropping under CIPA. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021)).

### 3. *Any Communication of Plaintiffs' Information to Facebook via CAPI Is Not Actionable Under CIPA*

The result is no different to the extent Plaintiffs' information was communicated to Facebook via CAPI, another technology mentioned in the First Amended Complaint. Under CIPA, a party to a communication does not violate the statute where it records its own communications and then shares those recordings. *See Graham,* 533 F. Supp. 3d at 833; *Revitch v. New Moosejaw*, No. 18-cv-06827, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). As the FAC outlines, any communication via CAPI is a two-step process. A communication is first made between the user and LifeStance, which is stored on LifeStance's server. *See* FAC ¶ 82. Soon after, that stored communication is shared with Facebook. *Id.* The initial storing of the communication on LifeStance's server is effectively a recording by LifeStance of its own communications—*i.e.*, communications between itself and plaintiffs. Any subsequent sharing of that communication, in this case via CAPI, is outside the ambit of CIPA. *See Graham*, 533 F. Supp. 3d at 833; *Revitch*, 2019 WL 5485330, at *2.

### 4. ***Plaintiffs Fail to Sufficiently Allege That Data Was Sent, Received, or Intercepted in California***

Plaintiffs' CIPA claim fails for the further reason that it applies only when the communication at issue "is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). While Plaintiffs do allege that Plaintiff Yick is a resident of California, *see* FAC ¶ 49, the FAC does not allege any specific facts detailing the locations from which messages by any Plaintiff were sent or received. Further, as to any such communication emanating from LifeStance, Plaintiffs concede that all such communications, to the extent they exist, were sent from, or were received by LifeStance in Arizona. *See* FAC ¶ 341 ("Defendant's breaches of duty to Plaintiffs and Class Members emanated from Arizona.").

And although Plaintiffs attempt to cure this deficiency by now alleging—in conclusory fashion—that the "communications were intercepted in California where Meta is located," FAC ¶ 352, this is not nearly enough. Courts have dismissed CIPA allegations where plaintiffs "do[ ] not allege sufficient facts as to *how* and *when* the third party receives the communications," requiring that plaintiffs "must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'" *Licea*, 659 F. Supp. 3d at 1085 (emphasis added). As courts have held, merely "[u]sing the word 'intercept' repeatedly is simply not enough [for a CIPA claim] without the addition of specific facts that make it plausible [defendant] is intercepting [plaintiffs'] data in transit." *Rodriguez v. Google LLC*, No. 20-cv-04688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). So too here. Adding the phrase "intercepted in California" does not fix Plaintiffs' deficient First Amended Complaint, and Plaintiffs' failure to allege "*how* the [communications] are intercepted simultaneously" by Facebook is fatal to their claim.[10]

---

[10] *Martin v. Sephora USA*, 22-cv-01355, 2023 WL 2717636, at *17 (E.D. Cal. Mar. 30, 2023) (dismissing CIPA claim with prejudice because "conclusory" allegation that defendant allows a third party to "intercept [the communications] (during transmission and in real time)," failed to allege more); *see In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing CIPA claim as "inadequately pleaded" despite allegations that third party "intercepted their electronic communications 'during

### 5.        *Plaintiffs Fail to Adequately Allege LifeStance Aided or Abetted Any Wrongdoing by Facebook*

Plaintiffs also allege that LifeStance aided and abetted violations of CIPA, but those allegations fail at the outset because the FAC does not allege any underlying wrongdoing by Facebook for which LifeStance could be held liable. Under CIPA, a party to a communication may be liable for enabling a third party's wrongdoing *only* where such wrongdoing by a third party exists. *See Graham*, 533 F. Supp. 3d at 833.  For example, against a similar backdrop in *Graham,* the court found that the defendant, a website that employed a third-party tracker, was not liable under CIPA for the third party's actions because there was no underlying wrongdoing. *Id*. Specifically, the third party in *Graham* provided a tracking tool "that allow[ed the defendant] to record and analyze its own data in aid of [the defendant]'s business." *Id*.

Here, the conduct that Plaintiffs allege violates CIPA is exactly like the conduct in *Graham* that the court found did *not* constitute wrongdoing under CIPA.  Specifically, Plaintiffs allege that Facebook's "Business Tools," which includes the pixel technologies, "allows [LifeStance] to optimize the delivery of ads, measure cross-devices conversions, create custom audiences and decrease advertising and marketing costs."  FAC ¶¶ 126, 173. In other words, each of these uses allows LifeStance to "analyze its own data in aid of [its] business," which the *Graham* court found was insufficient to constitute wrongdoing. *Graham,* 533 F. Supp. 3d at 832.  The fact that Facebook makes money from the permitted use of "selling targeted advertising," FAC ¶ 191, does not somehow convert such conduct into wrongdoing.  Moreover, Plaintiffs make no specific allegation that Facebook sold Plaintiffs' private information, which *Graham* found to be a distinguishing factor in determining whether a third-party tracker committed wrongdoing.  *See id.*

///

transmission'" and "about how [the third party's] data collection occurs 'in real time,'" *see* Consol. Compl., *In re Vizio, Inc., Consumer Privacy Litig.,* No. 16-ml-02693 (C.D. Cal. 2017 Aug. 15. 2016) , Dkt. No. 108).

## II.   PLAINTIFFS' UNFAIR COMPETITION LAW CLAIMS

### A.   Plaintiffs Have Not Adequately Pled California Unfair Competition Law Claims

Plaintiffs allege LifeStance violated both the unlawful and unfair prongs under Cal. Bus. & Prof. Code § 17201, *et seq.*, otherwise known as the Unfair Competition Law ("UCL"). Both claims suffer from multiple deficiencies that each merit dismissal.[11]

#### 1.   *Plaintiffs Fail to Allege a Violation in California*

Under California law, "a presumption exists against the extraterritorial application [of] state law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014). "[T]he presumption against extraterritoriality applies to the UCL in full force." *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011). As the Ninth Circuit has determined, "if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018).

As highlighted above in Section III.A, Plaintiffs fail to plead that LifeStance's alleged misconduct occurred in California.  In fact, Plaintiffs suggest that any alleged unfair or unlawful practice by LifeStance occurred outside the state of California by alleging that "[LifeStance's] breaches of duty to Plaintiffs and Class Members emanated from Arizona." FAC ¶ 341.  Given the lack of liability-creating conduct occurring in California, the UCL cannot apply, and all claims thereunder should be dismissed.  *See Oman*, 889 F.3d at 1079.

#### 2.   *Plaintiffs Fail to Allege Actual Reliance*

Plaintiffs' UCL claims also fail because Plaintiffs do not plead *actual reliance*, as required under California law.  Because Plaintiffs' unfair competition claim is based on an alleged misrepresentation by LifeStance regarding its privacy policies, FAC ¶¶ 417-20, Plaintiffs must allege that they read, understood, and actually relied on the alleged

---

[11]   To the extent Plaintiffs' UCL claims are grounded in fraud, the UCL allegations in the First Amended Complaint are also deficient because they do not meet the heightened pleading standard of Rule 9(b). *Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2010 WL 3910169, at *5 (N.D. Cal. Oct. 5, 2010)

misrepresentation.[12] Ninth Circuit courts have extended this actual reliance requirement to claims brought under both the UCL's unlawful and unfair prongs so long as the gravamen of the claim is misrepresentation, as it is in this case. *See dotStrategy Co. v. Facebook Inc.*, 482 F. Supp. 3d 994, 1001 (N.D. Cal. 2020); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Here, although Plaintiffs claim that LifeStance "breached its own privacy policy" by using pixel technologies, FAC ¶ 204, Plaintiffs still do not allege that they actually read any specific misrepresentations by LifeStance as to their privacy policies—much less that reading them "played a substantial part" in their decision to use LifeStance's mental health services. *Perkins*, 53 F. Supp. 3d at 1220.  Plaintiffs' failure to allege *facts* regarding when they read the privacy policy— or that they even did so before deciding to use LifeStance's services—is fatal to their claim, and thus they fail to plead actual reliance.

### 3.        *Plaintiffs Fail to Allege Any Actual Injury*

Plaintiffs also fail to allege that they suffered any actual injury as a result of any purported violation of the UCL—another required element of a UCL claim. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir. 2009); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) ("[A] UCL plaintiff must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'") (emphasis in original).

Plaintiffs do not, and cannot, plead facts sufficient to demonstrate that they suffered injury in the form of loss of money or property. Plaintiffs make conclusory allegations that they lost money in the form of payments to LifeStance, as well as access to their data, FAC ¶ 425, without providing facts to support either allegation.

---

[12]     *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) ("When the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to state a claim for relief.").

Plaintiffs also allege that LifeStance's actions diminished the value of their personal data. FAC ¶ 425. However, these allegations are not sufficient to show an injury for purposes of a UCL claim, particularly when one has no intention of selling something. Under the UCL, merely claiming that "the information was taken and therefore it has lost value" is not enough; a plaintiff must also point to their active participation in a market for that data. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (finding no UCL injury where plaintiff "provided no market for the personal information or the impairment of the ability to participate in that market"). In other words, information which has "external value, but no economic value to [the] plaintiff," is insufficient to support a UCL claim. *Hart*, 526 F. Supp. 3d at 603 (N.D. Cal. 2021); *see also Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) ("[T]he mere misappropriation of personal information does not establish compensable damages.").

The cases that Plaintiffs rely on are likewise inapposite. FAC ¶ 272 . In *In re Facebook Privacy Litig.*, the Ninth Circuit ultimately *rejected* the plaintiffs' UCL claim, affirming the district court's dismissal of that claim for failure to demonstrate an injury. 572 F. App'x 494,494 (9th Cir. 2014). And in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, the plaintiffs alleged the loss of personal data due to a security breach, resulting in them spending money—which defendants had not reimbursed—on credit monitoring and identity-theft remediation. 440 F. Supp. 3d 447, 491–92 (D. Md. 2020). There are no such allegations here. Accordingly, Plaintiffs can point to no injury under the UCL.

**B.     Plaintiffs' Claims Under the Arizona Consumer Fraud Act Fail**

Plaintiffs also allege LifeStance violated A.R.S. § 44-1522 of the Arizona Consumer Fraud Act ("ACFA"). "[T]o succeed on a claim of consumer fraud, a plaintiff must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004). Despite a chance to rectify their claim, Plaintiffs' ACFA claim still fails because they (i) fail to plead

with the required particularity; (ii) fail to allege a sale or advertisement of merchandise; and (iii) fail to allege a cognizable injury.

### 1.    *Plaintiffs Fail to Plead Fraud with Particularity as Required*

Like other claims sounding in fraud, claims brought under the ACFA must be pled with the particularity required by Rule 9(b).[13]  The Ninth Circuit has interpreted "Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Plaintiffs fail to do so.

Regarding Plaintiffs' claim of misrepresentation in LifeStance's privacy policy, there is no specific factual allegations regarding any time that Plaintiff Yick, Plaintiff Strong, or any other class member viewed the alleged misrepresentations as required by Rule 9(b). *See id.* Plaintiffs state only in the most conclusory terms that they "viewed and relied upon [LifeStance]'s representations in its privacy policies concerning the confidentiality of information provided by patients . . . to [LifeStance]." FAC ¶¶ 417, 432. Notably absent from such conclusory allegations is the date at which any Plaintiff viewed the policy—much less how it was reviewed. *See Kearns*, 567 F.3d at 1124 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."(citation omitted). Plaintiffs' failure in this regard merits dismissal.[14]

The further ramification of Plaintiffs' failure to allege the "when" of any alleged misrepresentation is that Plaintiffs cannot plead actual reliance. As under the UCL, Plaintiffs must show *actual reliance* to sustain a claim under the ACFA. *Lorona v. Ariz.*

---

[13]    *See Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, No. CV-19-04684, 2020 WL 411188, at *8 (D. Ariz. Jan. 24, 2020).

[14]    *See Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1141 (S.D. Cal. 2016) (dismissing a consumer fraud claim under Rule 9(b) where plaintiffs "[did] not specifically allege when and where [they] saw the misrepresentations"); *Maricopa County v. Off. Depot, Inc.*, No. 14-cv-1372, 2014 WL 6611562, at *7 (D. Ariz. Nov. 21, 2014) (dismissing an ACFA case because "[p]laintiff was required to plead its fraud claims with particularity which means pleading the who, what, when, where and how of the alleged fraud, which plaintiff has failed to do").

*Summit L. Sch., LLC*, 188 F. Supp. 3d 927, 933 (D. Ariz. 2016). Without specifying when Plaintiffs viewed LifeStance's alleged misrepresentations, Plaintiffs cannot claim that these misrepresentations influenced their decision to use LifeStance's services. *See Andren*, 207 F. Supp. 3d at 1141. As pled, Plaintiffs very well could have first read LifeStance's privacy policies shortly before filing the FAC, which would make it impossible for them to rely on statements therein when entering any alleged transaction, because they stopped using LifeStance's services in early 2023. *See* FAC ¶¶ 287, 303.   *Cf. Lorona*, 88 F. Supp. 3d at 936 (finding reliance adequately pled because "[plaintiff] explicitly states that she reviewed [the misrepresentation] before deciding to [enter the transaction]").

Plaintiffs' claim of fraudulent omission likewise fails.[15] "A claim under the ACFA's omission clause 'requires proof that the omission is material and made with intent that a consumer rely thereon.'" *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 830 (D. Ariz. 2016). "An omission is material if it is 'logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction.'" *Id.* Plaintiffs' allegations do not meet these standards because they fail to allege with any specificity that LifeStance made an omission "with intent that a consumer rely thereon." *Id.*  Purely reciting the elements of the ACFA, the Complaint alleges in entirely conclusory manner that "[LifeStance]'s actions also constitute deceptive and unfair acts or practices because Defendant intended that Plaintiffs and Class Members rely on its deceptive and unfair acts . . . ." FAC ¶ 446.  This is not enough.  And Plaintiffs' attempt to shore up these conclusory pleadings with added allegations that LifeStance made "false and misleading statements and omissions in its privacy policies" and acted "with the intent" to "acquire" and "use" Plaintiffs' "Private Information without their authorization" and to "gain access to Plaintiffs' . . . personal computing devices through the 'fbp' cookie disguised as a first-party cookie" are similarly deficient.  FAC ¶¶ 400–02.

---

[15]    While Plaintiffs allege LifeStance omitted the fact that it was disclosing their information to Facebook, this is at odds with the rest of the First Amended Complaint. As Plaintiffs allege, LifeStance's publicly available source code shows that the website employs pixel technologies which share user information.  FAC ¶¶ 130, 145, 147.

*First*, although Plaintiffs claim that LifeStance's use of pixel technologies violated its own privacy policies, FAC Title H, none of these claims allege any facts sufficient under Rule 9(b) to show that LifeStance "intended" to make any omission upon which a consumer would rely.  It is well-settled that "[n]ot every omission of fact will support a consumer fraud claim under the [ACFA]." *Demaree v. Wal-Mart Stores, Inc.*, 511 F. App'x 660, 661 (9th Cir. 2013).  And courts have dismissed ACFA claims based upon similar allegations, such as where plaintiffs alleged that a defendant was both "[m]isrepresenting that it would protect the privacy and confidentiality of [Plaintiffs'] PII," and "[o]mitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure [Plaintiff's] Personal Information," "*as promised in their Privacy [policy]*," and where the defendant allegedly "intended to mislead [plaintiff] . . . and induce [him] to rely on its misrepresentations and omissions." *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-cv-01860, 2019 WL 3753308, at *7 (N.D. Cal. Aug. 8, 2019) (Complaint, Dkt. No. 1 ¶¶ 21, 86, 88) (emphasis added).  The court dismissed the claim because even those allegations regarding "omissions" in a website's privacy policy "include[d] no facts, as opposed to conclusions, to support a finding that any misrepresentation or omission was false, let alone false at the time made." *Anderson*, 2019 WL 3753308,. at *7.  None of the alleged facts are sufficient to demonstrate that anyone intentionally deceived consumers. *See Cheatham*, 161 F. Supp. 3d at 830.

*Second*, Plaintiffs likewise fail to adequately allege reliance upon LifeStance's privacy policies.  Although they state, in conclusory fashion, that they "relied upon" LifeStance's "concealment and omission of material facts" and "suffered harm and injury" as a result, FAC ¶¶ 446–47, 453, this Court has held that such allegations are insufficient for ACFA purposes "to allege any facts indicating [plaintiffs] were aware of [defendant's] . . . privacy policy . . . at the time they provided their PII" to a defendant. *Quinalty v. FocusIT LLC*, No. CV-23-00207, 2024 WL 342454, at *6 (D. Ariz. Jan. 30, 2024).

/ / /

/ / /

### 2. *Plaintiffs Fail to Allege an Underlying Sale or Advertisement of Merchandise as Required Under ACFA*

While the ACFA prohibits fraudulent business practices, it does so only in connection with the sale or advertisement of merchandise.[16] *Kuehn*, 91 P.3d at 351. "Sale" means any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases, and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale. A.R.S. § 44-1521 (7). And "advertisement" includes the attempt by "publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." A.R.S. § 44-1521 (1). The FAC's characterization of the Plaintiffs' interactions with LifeStance still do not fall within either of these definitions.

*First*, despite the low bar set to meet this required element, Plaintiffs still fail to plead a sale of merchandise. Plaintiffs allege in a conclusory manner that they "started receiving healthcare services from LifeStance in or about March 2022," FAC ¶ 287, and "July 2022," *id.* ¶ 303, respectively, and "continued such activity thereafter through early 2023," *id.* ¶¶ 287, 303. Absent from Plaintiffs' allegations is a connection to a specific transaction or attempted transaction, which is the staple of an actionable "sale" under the ACFA. *See, e.g.*, *In re Ariz. Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1028 (D. Ariz. 2017); *Cheatham*, 161 F. Supp. 3d, at 825-31. And in cases where the court has found adequately pled ACFA claims, the plaintiffs identify the specific transactions in their complaint.[17] Plaintiffs fail to make any connection to a specific transaction in the FAC and therefore do no allege a "sale" as required by the ACFA. *See Theranos*, 256 F. Supp. 3d at 1028; *Cheatham*, 161 F. Supp. 3d at 825-31.

---

[16]    "Merchandise" means any objects, wares, goods, commodities, intangibles, real estate or services.  A.R.S. § 44-1521 (5).

[17]    *See, e.g.*, Second Amended Complaint ¶¶ 210, 224, *In re Ariz. Theranos, Inc., Litig.*, No. 16-cv-02138 (D. Ariz. Oct. 20, 2017), ECF No. 159; Class Action Complaint ¶ 35, *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. 15-cv-02291 (D. Ariz. Nov. 12, 2015), ECF No. 1; Class Action Complaint ¶ 48, *Cheatham v. ADT Corp.*, No. 15-cv-02137 (D. Ariz. Oct. 23, 2015), ECF No. 1-1.

*Second*, LifeStance's privacy policy, which Plaintiffs allege contained the misrepresentations and omissions, is not an "advertisement" under A.R.S. § 44-1521 (1) because its purpose is not to "induce directly or indirectly any person to enter into any obligation." A.R.S. § 44-1521(1). The privacy policy is published pursuant to HIPAA and is intended only to "describe[ ] how medical information about you may be used and disclosed and how you can get access to this information." LifeStance Health, Privacy Policy, HIPAA Notice of Privacy Practices (2021), *https://lifestance.com/privacy-policy/*. Required regulatory disclosures are not "advertisements."[18] Without the requisite "sale" or "advertisement," Plaintiffs cannot adequately plead a claim under the ACFA.

### 3. *Plaintiffs Fail to Allege a Cognizable Injury*

As with their other claims, Plaintiffs' ACFA claim also fails because Plaintiffs do not allege a cognizable injury for which they could recover damages. "To state a claim under the ACFA, [Plaintiffs] must allege that [they have] been damaged by [Defendant's] violation of the Act." *Cheatham*, 161 F. Supp. 3d at 831. "A private individual's relief under the [ACFA] is his actual damages suffered as a result of the unlawful act or practice." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992).

The FAC entirely fails to identify any actual, recoverable damages. Plaintiffs allege in a conclusory manner that they have been "damaged" and are entitled to "monetary damages," FAC ¶ 455, but identify no specific payment made to LifeStance that would entitle them to such.[19]  Plaintiffs also claim that their harm suffered includes the "erosion of the essential confidential relationship between the healthcare provider and the patient."

---

[18]     *Compare* LifeStance Privacy Policy, *with Henderson v. Chase Home Fin., LLC*, No. CV 09-2461, 2010 WL 1962530, at *3 (D. Ariz. May 14, 2010) (unsolicited, directly communicated offer of loan forbearance by defendant constituted an advertisement under the ACFA); *Raup v. Wells Fargo Bank, NA*, No. CV-13-00137, 2013 WL 3216175, at *4 (D. Ariz. June 25, 2013) ( "widely promoted" new practices regarding loan modification and foreclosure constituted an advertisement under the ACFA).

[19]     *See Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. CV-15-02291, 2016 WL 3570465, at *4 (D. Ariz. July 1, 2016) (finding damages adequately pled where plaintiff identified the specific purchase of Microsoft Office with automatic renewal); *Cheatham*, 161 F. Supp. 3d at 831 (finding damages adequately pled where plaintiff identified purchase of a wireless security system and ongoing payments pursuant to a contract entered).

FAC ¶ 450. But the "erosion" of a relationship, without more, is not an actionable harm.

**C.    Plaintiffs Do Not Allege Any Violation Under the New York General Business Law**

Regardless of the state law under which they attempt to plead, Plaintiffs continue to face the recurring issue of the lack of any quantifiable, concrete injury.  As with ACFA, Plaintiffs fail to allege any facts in their First Amended Complaint that would support a violation of the New York General Business Law (the "NYGBL"), N.Y. Gen. Bus. Law § 349.  To establish a cause of action under the NYGBL, a plaintiff must prove that the challenged act or practice was (1) consumer-oriented; (2) misleading in a material way; and (3) that the plaintiff suffered actual injury as a result of the alleged deceptive act.  *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (App. Div. 2002). In addition, jurisdictional requirement to qualify as a prohibited act under the statute, "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (N.Y. 2002).  Here, Plaintiffs fail to allege any facts demonstrating that they engaged in a transaction in or were deceived in New York, or that Plaintiffs suffered any actual injury as a result of the alleged misrepresentations.

*First*, Plaintiffs fail to allege that they engaged in a transaction that occurred in New York.  Because the NYGBL was "meant to apply to intrastate transactions in New York," *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 (2d. Cir. 2012) (citation omitted), to bring a cause of action under the statute "the transaction in which the consumer is deceived must occur in New York." *Goshen*, 98 N.Y.2d at 324; *see also English v. Danone N. Am. Pub. Benefit Corp.*, 22 CV 5105, 2023 WL 4187515, at *2 (S.D.N.Y. 2023) .  As explained in Section II.B.2, Plaintiffs fail to allege that they entered or attempted *any* specific transaction with adequate detail, let alone one that occurred in New York. *See* FAC ¶ 287. Even assuming Plaintiffs did allege a transaction, they fail to show that they were deceived in New York.  Plaintiffs fail to allege the simple fact that they actually read the claimed misrepresentations and omissions in LifeStance's privacy policy serving as the basis for their NYGBL claim.  Without such detail, Plaintiffs cannot meet the jurisdictional

requirement of the NYGBL.

*Second*, as with the ACFA claims discussed above in Section V.C., Plaintiffs cannot plausibly show any actual injury as a result of any alleged material deceptive act or omission. The "erosion" of the healthcare provider/patient relationship, FAC ¶ 470, does not suffice to allege actual injury under the NYGBL. New York courts have been clear that "the release of potentially sensitive information alone, without evidence of misuse, is insufficient to cause damage to a plaintiff [for purposes of a N.Y. Gen. Bus. Law § 349 claim]."[20] *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009)); s*ee also Chase Manhattan Bank*, 741 N.Y.S.2d at 102. Plaintiffs' failure to allege any actual injury resulting from LifeStance's use of pixel technologies is fatal to their NYGBL claim.

## III.    PLAINTIFFS' PRIVACY CLAIMS

### A.    Plaintiffs Fail to Allege an Affirmative Communication of Medical Information in Violation of the California Confidentiality of Medical Information Act

Returning to California law, Plaintiffs assert a claim under Section 56.10 of the California Confidentiality of Medical Information Act ("CMIA") for the affirmative disclosure of medical information without express authorization. Plaintiffs fail to adequately plead the most fundamental elements of a CMIA claim: that LifeStance *affirmatively* disclosed Plaintiffs' *medical information* to an *unauthorized* third party. In addition, any CMIA claim also fails to the extent it relates to conduct that occurred before January 1, 2023, when relevant parts of CMIA went into effect.

#### 1.    *The Data at Issue is Not "Medical Information"*

Plaintiffs' CMIA claim fails first and foremost because they do not adequately allege

---

[20]    Plaintiffs' allegations that pixel technologies are used for "marketing" and "advertising," *e.g.*, FAC ¶ 33, does not constitute "misuse" under § 349. *See, e.g., Cohen v. Casper Sleep, Inc.*, Nos. 17cv9325, 17cv9391, 2018 WL 3392877, at *7-8 (S.D.N.Y. July 12, 2018) (dismissing § 349 claim despite allegations that defendant's website shared plaintiff's "personal and private information" with third parties, including mouse clicks, cookies, and communications, because the data was not "particularly sensitive" nor was it shared "for any reason other than marketing") (citation omitted).

that LifeStance disclosed "medical information" as defined by CMIA. California courts have explained that "medical information cannot mean just any patient-related information" but must be "substantive information regarding a patient's medical condition or history that is combined with individually identifiable information." *Eisenhower Med. Ctr. v. Superior Ct.*, 172 Cal. Rptr. 3d 165, 168–69 (Ct. App. 2014). California courts have explicitly refused to include in this definition "appointment information" which includes "name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times." *Wilson v. Rater8, LLC*, No. 20-cv-1515, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021).

Plaintiffs do not allege the disclosure of substantive information regarding medical treatment, condition, or history in anything more than conclusory fashion, and their own factual allegations demonstrate that any disclosures do not amount to medical information under CMIA. *See Wilson*, 2021 WL 4865930, at *5. Rather, Plaintiffs assert that while "select[ing] filters or enter[ing] keywords" into the "search bar," on the "Find a Provider" page on LifeStance's website, their medical information was disclosed to LifeStance. *See* FAC ¶ 141. But these pre-determined filters concern only general appointment details. *See* FAC fig.4, ¶ 140.

And although Plaintiffs have now added allegations of disclosures of when "a patient clicked to join [a] waiting room to meet with a provider," FAC ¶ 148, or when users clicked to select "which state they were in for the telehealth waiting room," to "access and review conditions treated by LifeStance," to "search for therapists," or to "call a therapist," FAC ¶ 179, these still fail to describe "medical information." Courts have held that plaintiffs failed to allege disclosure of "medical information" even where plaintiffs allege that they had to "'fill out medical and personal information such as the reason for the visit, name, email, phone number, address, and, as an option. [their] social security number' when creating appointments online at [defendant's website]," and where they did in fact enter "sensitive personal and health information" when scheduling those online appointments. *Cousin v. Sharp Healthcare*, No. 22-cv-2040, 2023 WL 4484441, at *4 (S.D. Cal. July 12, 2023)

- 25 -

(quoting complaint). And even where a plaintiff alleged disclosure of his "treating physician[s'] names, medical treatment appointment information, and medical treatment discharge dates and times," that was not enough to constitute "medical information." *Wilson*, 2021 WL 4865930, at \*5 (S.D. Cal. Oct. 18, 2021). Plaintiffs' allegations about the disclosure of the fact that they "access[ed] and review[ed] conditions treated by LifeStance" or that they clicked a button "to join [a] waiting room" or to "call a therapist" are far vaguer than what was alleged in *Wilson*, where even actual "treatment appointment information" was not enough. Accordingly, any such disclosures are not actionable under the CMIA. *Id.* at \*5; *Eisenhower*, 172 Cal. Rptr. 3d at 168.

Moreover, Plaintiffs allege that the information sent to Facebook includes identifying information "along with each search filter the patient selected," but the only examples of identifying information listed in the First Amended Complaint are "IP address, FID, datr and fr cookies." *See* FAC ¶ 142. Plaintiffs assert that the pixel technologies use this information "to help Facebook identify patients," FAC ¶ 133, but nowhere is there any allegation that LifeStance sends to Facebook actual identifying information, as defined by the CMIA.[21]

### 2.    *CMIA Allows for the Use of Contractors*

Even if one were to view the use of pixel technologies as an affirmative communication of medical information, CMIA expressly allows health-care providers to rely upon third parties, like Meta, to help analyze data. Under section 56.10(c)(3) of CMIA,

---

[21]    Too many additional factors—including whether the person has or is logged in a Facebook account and the specifics of their browser settings—affect whether Facebook can match the data sent by the pixel to a patient's identity. Pixel technologies work only by requesting data from the visitor's browser, and they cannot communicate anything not already in the Plaintiffs' browsers. Indeed, people can easily delete cookies, set their browsers to delete cookies when they close the browser, block first- and/or third-party cookies, or simply choose not to be part of Facebook. The FAC makes no allegation that LifeStance had knowledge of Plaintiffs' decision to have Facebook data available in their browsers. The FAC also fails to plead that Facebook was in fact able to match the information sent by pixels on the LifeStance Website with an identifiable Plaintiff, and instead only alleges that, in general, "Meta matches [data from the pixel] to its users." FAC ¶ 194. In similar cases, where there is no allegation that the information shared was identifiable to the recipient, California courts have dismissed CMIA claims as insufficient. *See London v. New Albertson's, Inc.*, 2008 WL 4492642, at \*5 (S.D. Cal. Sept. 30, 2008).

medical information can be disclosed "to a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care. . . ."  Here, even if the information communicated were medical information (and it is not), Plaintiffs' allegations that LifeStance used pixel technologies for "reducing the cost of advertising and retargeting," FAC ¶ 263, certainly constitutes the "other administrative services," and as such, the CMIA permits disclosure.  *See, e.g.*, *Emmerick v. Ridgecrest Reg'l Hosp.*, No. 117-cv-01160, 2018 WL 784302, at *2, 4 (E.D. Cal. Feb. 8, 2018) (dismissing CMIA allegation on 56.10(c)(3) grounds despite defendant allegedly faxing plaintiff's PHI to a third party).

### 3.     *CMIA Only Applied to Mental Health After January 1, 2023*

Even if Plaintiffs had adequately alleged a violation of CMIA, their claims should be dismissed for any period prior to January 1, 2023.  Only on September 28, 2022, did California Governor Gavin Newsom sign Assembly Bill 2089 ("AB 2089").  The bill extended CMIA to include "mental health application information" in its definition of "medical information," and imposed additional CMIA obligations on online mental health digital services, including website services like LifeStance that help facilitate mental health services.  Before January 1, 2023, effective date of AB 2089,[22] the LifeStance website would not have even been subject to CMIA.  Claims related to events before that date should therefore be dismissed.

### B.     Plaintiffs' Common Law Intrusion Upon Seclusion Claim Fails

Plaintiffs also attempt to assert a common law claim of intrusion upon seclusion, which requires Plaintiff to prove that there was "(1) an intentional intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person." *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002).

---

[22]     Cal. Const., art. IV, § 8, subd. (c)(1); *People v. Camba*, 50 Cal. App. 4th 857, 865 (Cal. Ct. App. 1996) ("Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner.").

Plaintiffs' claim fails because LifeStance cannot intrude upon a conversation to which it was a party, and Plaintiffs allege no conduct that was highly offensive.

Plaintiffs cannot allege that there was an "intentional intrusion" on the part of LifeStance: LifeStance had a right to know Plaintiffs' private information because Plaintiffs allege that they voluntarily disclosed that information and communicated it directly to LifeStance. *See Bruer v. Phillips L. Grp. PC*, No. CV-18-01843, 2019 WL 2552060, at *3 (D. Ariz. June 20, 2019) (finding intrusion upon seclusion was not adequately pleaded where plaintiff voluntarily communicated confidential information to defendant); FAC ¶¶ 110, 123. The very idea of an intrusion is that a party entered a situation to which it was not invited. *See, e.g.*, *Skinner v. Tel-Drug, Inc.*, No. CV-1600236, 2017 WL 1076376, at *4 (D. Ariz. Jan. 27, 2017). Here, however, Plaintiffs affirmatively communicated information to LifeStance, and LifeStance cannot be held to have intruded into information that Plaintiffs voluntarily sent to them.

Realizing that they cannot support allegations that LifeStance "intruded" on communications for which it was the intended recipient, Plaintiffs attempt to argue that the intrusion occurred when LifeStance allegedly communicated with Facebook. FAC ¶¶ 129–30. That allegation does not satisfy the elements of intrusion upon seclusion under Arizona law. Arizona courts follow the test for intrusion upon seclusion from the Restatement (Second) of Torts § 652B. *Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 995 (Ariz. Ct. App. 2019), vacated in part, 482 P.3d 390 (2021). Under this analysis, an intrusion upon seclusion can be a "physical intrusion into a place in which the plaintiff has secluded himself" or it can be an intrusion by "the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs" or "some other form of investigation or examination into his private concerns . . . ." *Restatement (Second) of Torts* § 652B, cmt. b. Every example from the Restatement describes a defendant secretly prying into a space or communication to which they are not a party. That is not the case here. Plaintiffs intended to communicate with LifeStance. To the extent Plaintiffs allege

that LifeStance improperly communicated this information to a third party, that is not an intrusion upon seclusion.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court dismiss all of Plaintiffs' claims with prejudice.


DATED this 22nd day of February, 2024.

SNELL & WILMER L.L.P.


By: *s/ Jennifer Hadley Catero*
Jennifer Hadley Catero
Patrick A. Tighe
One East Washington St., Ste. 2700
Phoenix, AZ  85004-2556

and

Edward R. McNicholas
(Admitted *pro hac vice*)
Frances Faircloth
(Admitted *pro hac vice*)
Christopher M. Nienhaus
(Admitted *pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, DC 20006

Andrew J. O'Connor
(Admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199

*Attorneys for Defendant*