Hart L. Robinovitch (AZ SBN 020910)
Ryan J. Ellersick (AZ SBN 038805)
**ZIMMERMAN REED LLP**
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com
Email: ryan.ellersick@zimmreed.com

David S. Almeida (*Admitted pro hac vice*)
Britany A. Kabakov (*Admitted pro hac vice*)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

*Attorneys for Plaintiffs & the Classes*

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Montana Strong and Debra Yick, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>LifeStance Health Group, Inc. d/b/a LifeStance, a Delaware corporation,<br><br>Defendant. | Case No. 2:23-cv-00682<br><br>*Assigned to the Honorable Krissa M. Lanham*<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>**Oral Argument Requested** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................................2

    A.   Litigation Background. ................................................................................2

    B.   The Settlement Terms. ................................................................................4

    C.   The Benefits the Settlement Provides. .......................................................4

    D.   Total Value of the Common Fund of Benefits ...........................................6

    E.   The Notice and Claims Administration Plans ............................................7

    F.   Opt Out Procedure and Opportunity to Object. .........................................8

    G.   Attorneys' Fees & Costs. ............................................................................8

III.    DISCUSSION .....................................................................................................9

    A.   The Proposed Settlement Warrants Preliminary Approval as a Fair, Adequate, and Reasonable Compromise of Disputed Issues. ...................................9

        1.   Plaintiffs and Class Counsel Have Adequately Represented the Class. ........10

        2.   The Settlement was Negotiated at Arm's Length. .........................................11

        3.   The Settlement Provides Significant Relief for the Class Representing a Fair, Adequate and Reasonable Compromise of Disputed Issues. .........................12

            a.   The Costs, Risks, and Delay of Further Litigation. ................................12

            b.   The Proposed Method for Distributing Relief is Effective......................15

        4.   The Views of Class Counsel. ........................................................................17

        5.   Extent of Discovery and the Stage of the Proceedings. ................................17

        6.   Absence of Evidence of Collusion. ...............................................................17

        7.   The Relief Provided in the Settlement is Adequate Taking into Account all Agreements Related to the Settlement. ..........................................................18

    B.   The Notice Plan is Reasonable and Satisfies Due Process. ...............................18

IV.     THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CONDITIONAL CLASS CERTIFICATION AT THE SETTLEMENT STAGE. .......20

    A.   All Fed. R. Civ. P. 23(a) Requirements are Satisfied. ..........................................20

        1.   The number of Settlement Class Members satisfy numerosity......................20

2.   There are questions of law and fact common to the Settlement Class. ..........21

3.   The Class Representatives' claims are typical of Class Members' claims. ...21

4.   The proposed Class Representatives will adequately protect the interests of the Settlement Class. ..................................................................................22

B.   All Fed. R. Civ. P. 23(b)(3) Requirements are Satisfied. ....................................23

1.   Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class. ........................................23

2.   A class action is superior for fair and efficient adjudication of the Action. ..24

V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CO-CLASS COUNSEL AND PLAINTIFFS AS CLASS REPRESENTATIVES. ......................................................25

VI.   CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................... 19, 22, 23

*Avila v. LifeLock Inc.*,
  2020 WL 4362394 (D. Ariz. July 27, 2020) ........................................ 18

*Brooks v. Pressed Juicery, Inc.*,
  336 F.R.D. 484 (E.D. Cal. 2020) ......................................................... 18

*Castillo v. Costco Wholesale Corp.*,
  2024 WL 4785136 (Nov. 14, 2024, W.D. Wash.).............................. 12

*Ciuffitelli v. Deloitte & Touche LLP*,
  2019 WL 1441634 (D. Or. Mar. 19, 2019)........................................ 16

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................... 15

*Dennis v. Kellogg,*
  697 F.3d 858 (9th Cir. 2012) ....................................................... 15, 16

*Doe v. Virginia Mason Med. Ctr.*,
  2021 WL 12295937 (Wash. Super. Sep. 28, 2021) ........................ 21, 23

*Ficalora v. Lockheed Cal. Co.*,
  751 F.2d 995 (9th Cir. 1985) ............................................................. 17

*Fleming v. Impax Laby's*,
  2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .................................. 20

*Frasco v. Flo Health, Inc.*,
  2025 WL 1433825 (N.D. Cal. May 19, 2025).................................... 13

*General Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)........................................................................... 19

*Gutierrex v. Converse, Inc.*,
  2025 WL 1895315 (9th Cir. July 9, 2025)........................................ 12

iii

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 9, 10, 12, 21, 22, 23

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992) ............................................................................................ 21

*Hansberry v. Lee*,
  311 U.S. 32 (1940).......................................................................................................... 22

*Hashw v. Dep't Store Nat. Bank.*,
  182 F. Supp. 3d 935 (D.Minn., 2016)................................................................................ 9

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)................................................................. 20

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................................................. 9, 11

*In re Atmel Corp. Derivative Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010)................................................................. 11

*In re Banc of Calif. Sec. Litig.*,
  2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .................................................................. 11

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)................................................................. 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ......................................................................................... 12

*In re Grp. Health Plan Litig.*,
   709 F. Supp. 3d 707 (D. Minn. 2023).......................................................................... 12

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................................................. 15

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ......................................................................... 12

*In re Nickelodeon Consumer Privacy Litigation*,
  827 F.3d 262 (3d Cir. 2016) ......................................................................................... 12

*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................... 15

iv

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................................................ 8

*In re Tableware Antitrust Litigation*,
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ................................................................................... 18

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................................... 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ...................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ................................................................. 11, 12

*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) .......................................................................... 23

*Juvera v. Salcido*,
  2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ......................................................................... 10

*Kane v. Univ. of Rochester*,
   2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ..................................................................... 12

*Kurowski v. Rush Sys. for Health*,
   2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)................................................................... 12, 14

*Kurowski v. Rush System for Health*,
  2023 WL 2349606 (N.D. Ill. Mar. 3, 2023)........................................................................... 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir.1978) ................................................................................................... 22

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017), aff'd 881 F.3d 1111 (9th Cir. 2018)....................... 13

*Mikulsky v. Bloomingdale's, LLC*,
  2025 WL 1718225 (9th Cir. June 20, 2025) .......................................................................... 12

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019)........................................................................ 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)........................................................................................................ 18

*Officers for Justice v. Civil Serv. Comm'r*,
  688 F.2d 615 (9th Cir. 1982) ......................................................................................... 10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ......................................................................................... 20

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ....................................................................................... 21

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013)................................................................ 15

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................................... 18

*Salazar v. Midwest Serv. Grp., Inc.*,
  2018 WL 3031503 (C.D. Cal. June 4, 2018) ................................................................ 12

*Scheider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020)................................................................................... 18

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ............................................................................... 20, 21

*Summers v. Sea Mar Cmty. Health Centers*,
  29 Wash. App. 2d 476 (2024)......................................................................................... 18

*Torres v. Prudential Fin., Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .............................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................................... 19, 20

*Wolin*,
  617 F.3d ................................................................................................................ 21, 22, 24

*Wood v. Ionatron, Inc.*,
  2009 WL 10673479 (D. Ariz. Sept. 28, 2009) ...................................................... 8, 16, 17

vi

**Statutes**

18 U.S.C. §§ 2510 ............................................................................................................. 1

New York General Business Law § 349 .............................................................................. 2

**Rules**

Fed. R. Civ. P ........................................................................................ 1, 19, 20, 22

Fed. R. Civ. P. 23(a)(1) ............................................................................... 20

Fed. R. Civ. P. 23(a)(4) ............................................................................... 22

Fed. R. Civ. P. 2 ............................................................................ 2, 19, 22, 23, 24

Fed. R. Civ. P. 23(c)(2) .................................................................................. 8

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 18

Fed. R. Civ. P. 23(e)(2) .............................................................................. 9, 10

Fed. R. Civ. P. 23(g)(1) & (g)(4) ................................................................. 24

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ............................................................... 24

Fed. R. Civ. P. 23 ...................................................................... 1, 15, 19, 24

Fed. R. Civ. P. 23(e) ................................................................................. 1, 9

Federal Rule of Evidence 408 ..................................................................... 10

Fed. R. Civ. P. 23(a)(2) ............................................................................... 20

Fed. R. Civ. P. 23(a)(3) ............................................................................... 21

Fed. R. Civ. P. 23(b) .................................................................................... 22

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................... 9

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................... 10

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................................. 18

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................... 16

Fed. R. Civ. P. 23(h)(1) ............................................................................................ 19

Fed. R. Civ. P. 23(a) ................................................................................................ 24

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 24

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Montana Strong and Debra Yick hereby move for Preliminary Approval of the class action settlement set forth in the Settlement Agreement, attached to the Declaration of Hart Robinovitch as Exhibit 1, filed August 29, 2025 ("SA"); to conditionally certify the Settlement Class under Fed.R.Civ.P. 23 and appoint Class Representatives and Class Counsel; to direct that Notice be sent to all Settlement Class Members in the reasonable manner proposed; to set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Petition for Service Awards and Fee Award; to set a date for a Final Approval Hearing; and to otherwise adopt all deadlines and requirements set forth in the SA and the proposed Order. Said motion is based on all declarations and records filed in support, as well as the entire court record.

## MEMORADUM OF SUPPORTING POINTS AND AUTHORITIES.

## I.    INTRODUCTION

Plaintiffs Montana Strong and Debra Yick, on behalf of themselves and the Settlement Class they seek to represent have reached a Settlement with Defendant LifeStance Health Group, Inc. ("LifeStance" or "Defendant") to resolve data privacy and security claims arising from Defendant's use of certain third-party tracking technologies on its website (the "Pixel Installation").[1] By their operative complaint, Plaintiffs allege that the third-parties' interception of their communications through the use of embedded pixels violate the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA" or the "Wiretap Act") and other privacy laws.[2]

The named Plaintiffs and the members of the Settlement Class will benefit from common fund of monetary, non-monetary and injunctive benefits secured under the settlement and distributed equitably based on the relative strength of their claims. The Settlement creates a monetary fund that exceeds $1.2 million, provides over one million class members the

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement and Release ("Settlement Agreement" or "SA"), attached as **Exhibit 1** to the Declaration of Hart L. Robinovitch ("Robinovitch Declaration"), filed in support of this Motion.
[2]    Through ¶ 9.2 of the SA the parties have stipulated to the filing of a Second Amended Complaint ("SAC"), which has been done contemporaneously with the filing of this motion. The definition of the national Class in the SAC is consistent with the definition of the Settlement Class in ¶ 1.42 the SA.

opportunity to receive a privacy monitoring product for one year at no cost (an approximate $265 annual value), and secures valuable injunctive relief that stops the online user monitoring practices complained of for a period of no less than five years. Overall, the Settlement benefits secured provide significant relief to Settlement Class Members and thus the Settlement falls well within the range of reasonableness necessary to support preliminary approval by the court under Fed.R.Civ.P. 23(e) allowing the class to be notified of the settlement terms. Therefore, this Court should preliminarily approve the Settlement, conditionally certify the Settlement Class under Fed.R.Civ.P. 23, direct that Notice be sent to all Settlement Class Members in the reasonable manner proposed below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Petition for Service Awards and Fee Award and set a date for a Final Approval Hearing.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Litigation Background.

This Action was initially filed by Plaintiffs Montana Strong and Debra Yick on April 21, 2023. *See* ECF No. 1. The material allegations of the Original Complaint centered on Defendant's alleged use of certain embedded third-party tracking technologies on its website (www.lifestance.com) (the "Website") to collect and to disclose its patients' sensitive medical information and personally identifiable information to third parties including, but not necessarily limited to, Meta Platforms, Inc. d/b/a Facebook and Google LLC without consent in violation of state and federal statutes. The Original Complaint asserted claims for (i) violations of the California Invasion of Privacy Act ("CIPA"), (ii) violations of the California Confidentiality of Medical Information Act ("CMIA"), (iii) violations of the Electronic Communications Privacy Act ("ECPA"), (iv) violations of California's Unfair Competition Law ("UCL"), (v) violations of the Arizona Consumer Fraud Act ("ACFA"), (vi) violations of New York General Business Law § 349 ("GBL"), (vii) intrusion upon seclusion, and (viii) breach of confidence.

On June 30, 2023, Defendant filed its Motion to Dismiss the Original Complaint. *See* ECF No. 14. Plaintiffs filed their Response in Opposition on July 30, 2023. *See* ECF No. 16. The Motion to Dismiss was fully briefed on August 11, 2023. *See* ECF No. 17. Judge Michael

T. Liburdi heard oral argument on the Motion on December 19, 2023. *See* ECF No. 23. During the hearing, Judge Liburdi dismissed the Original Complaint without prejudice and granted Plaintiffs leave to amend. *Id.*

On January 19, 2024, Plaintiffs filed their Amended Complaint. *See* ECF No. 32. The claims in the Amended Complaint were similar to those in the Original Complaint except Plaintiffs did not include a claim for breach of confidence. *Id.* On February 23, 2024, Defendant filed its Motion to Dismiss the Amended Complaint. *See* ECF No. 41. Plaintiffs filed their Response in Opposition on March 22, 2024. *See* ECF No. 47. The Motion to Dismiss was fully briefed on April 5, 2024. *See* ECF No. 48. The Action was subsequently re-assigned to the Honorable Krissa M. Lanham on August 7, 2024. *See* ECF No. 53.

On January 28, 2025, Judge Lanham issued an Order granting in part and denying in part the Motion to Dismiss. *See* ECF No. 57. The Court dismissed Plaintiffs' intrusion upon seclusion claim and denied the motion as to all other claims including, but not limited to, the ECPA claim. *Id.* The Order set deadlines for the Parties to meet and confer and to prepare a Rule 26(f) Joint Case Management Report. *Id.* The Parties did so (*see* ECF No. 58), and on February 12, 2025, the Court entered a Case Management Order that among other deadlines, required the Parties to engage in good faith settlement talks before April 30, 2025, *see* ECF No. 60.

The Parties began discussing the prospect of settlement and—to that end—agreed to participate in a private mediation before a third-party neutral, the Hon. Suzanne H. Segal (ret.) of Signature Resolution. Robinovitch Decl. ¶ 9. As part of the mediation, and to be in a position to thoroughly assess their relative negotiating positions, the Parties exchanged further information subject to mediation privileges through informal discovery as well as initial disclosures and provided the mediator with mediation briefing on issues such as the size and scope of the putative class and facts regarding the strength of Plaintiffs' claims and Defendant's defenses. Robinovitch Decl. ¶¶ 10, 13-14.

The Parties engaged in a full-day mediation on April 15, 2025 with Judge Segal in Los Angeles, California. Robinovitch Decl. ¶ 11. Although the Parties did not reach agreement at

the mediation, they—after subsequent remote sessions overseen by Judge Segal—came to an agreement, on April 23, 2025, on the material terms of the Settlement.  Robinovitch Decl. ¶ 11.

The Parties informed the Court regarding the Settlement in principal and turned their efforts towards negotiating and drafting the Settlement Agreement, and related documents..

## B.     The Settlement Terms.

In August 2025 Plaintiffs entered into the Settlement Agreement with Defendant LifeStance. *See* Robinovitch Decl. ¶ 15; Settlement Agreement ("SA"), attached to Robinovitch Decl. as Exhibit 1. Through the Settlement, Plaintiffs and LifeStance have agreed to resolve all claims related to the Pixel Installation on behalf of the Settlement Class. If finally approved, Defendant will provide a common fund of Settlement benefits valued at more than $4 million to be distributed to Settlement Class Members pursuant to Section 2 of the Settlement Agreement, pay for Settlement Notice, Settlement Administration and Expenses, and attorneys' fees and Litigation Expenses. Class counsel support the settlement and request that the Court grant preliminary approval of it.  Robinovitch Decl. ¶ 12.

## C.     The Benefits the Settlement Provides.

The Settlement allocates Settlement Class Members into three tiers or subclasses based on their level of engagement or interaction with the Website, and allocates corresponding relief to them based on the strength of the claims of each subclass. SA ¶¶ 1.42-1.43. The Settlement defines the "Settlement Class" as all natural persons who are members of Settlement Subclass 1, Settlement Subclass 2, and Settlement Subclass 3:

(a) **Settlement Subclass 1**: All members of LifeStance's total patient population who booked at least one session through LifeStance's online booking tool, accessed through LifeStance's public website lifestance.com, between March 1, 2020 and April 30, 2023.

(b) **Settlement Subclass 2**: All other members of LifeStance's total patient population between March 1, 2020 and April 30, 2023, not including those in Settlement Subclass 1.

(c) **Settlement Subclass 3**: All persons who visited the LifeStance website but did not book appointments online or otherwise become patients.

SA ¶¶ 1.42.  The proposed Settlement Class definition is consistent with that in the Second Class Action Complaint, which the parties have stipulated to the filing of.  SA ¶ 1.42, ¶ 9.2

4

If approved, Defendant will provide Settlement Class Members the following benefits:

(a) **Settlement Subclass 1**: All members of Settlement Subclass 1 who timely submit Approved Claim Forms will receive: (i) a *pro rata* cash payment from the $1,203,405.00 Settlement Subclass 1 Fund, less any amount awarded by the Court to Class Counsel as reasonable attorneys' fees and costs and (ii) the ability to enroll in a twelve (12) month subscription to Privacy Monitoring without cost to the Settlement Class Member. Any residual funds, including undistributed amounts from uncashed checks or unprocessed payments after passage of one hundred and twenty (120) days shall be paid to the *Cy Pres* Recipients in equal shares.

(b) **Settlement Subclass 2**: all members of Settlement Subclass 2 shall receive an offer to enroll in a twelve (12) month subscription to Privacy Monitoring without cost to the Settlement Class Member.

(c) **Settlement Subclass 3**: members of Settlement Subclass 3 will receive Injunctive Relief Benefits. Defendant will disable and forego use of all third-party tracking pixels, to the extent any remain, other than tracking pixels compliant with HIPAA, for a period of five (5) years from the Effective Date of this Settlement Agreement.

(d) **For all Settlement Class Members:** Defendant will create the Administrative Expense Fund of $300,000.00 to fund any and all costs and expenses associated with the Court-approved Notice program and administration of the settlement, including maintenance of the Settlement Website and toll-free phone number.

(e) **For Settlement Subclass 2 and Settlement Subclass 3:** Defendant will pay up to $750,000.00 to Class Counsel as attorneys' fees and costs for their work securing the relief for the Tier 2 and Tier 3 Subclasses.

SA ¶¶ 2.1-2.2.

The Privacy Monitory product provided under the Settlement is a twelve-month subscription to CyEx's Privacy Shield Pro. SA ¶ 1.34. This product monitors the dark web for subscribers' personal information, provides a virtual private network ("VPN") to encrypt subscribers' data and to mask their IP addresses, allows subscribers to use a private search engine that does not store personally identifiable information, automatically requests that data brokers remove subscribers' personal information, and manages subscribers' passwords across multiple devices, and allows consumers to store documents and records within an encrypted digital vault. *See generally* Jerry Thompson Declaration. The retail value of the Privacy Monitoring product is $24.95 per month or $265 annually. https://cyex.com/privacy-shield. *Id.* at ¶ 8. Submission of a claim form is not required for Settlement Subclass 1 and 2 members to receive the Privacy Monitoring product.

In exchange for the consideration above, Plaintiffs and Settlement Class Members who

do not timely and validly exclude themselves from the Settlement will be deemed to have released LifeStance from claims arising from or related to the Pixel Installation at issue in this Action. SA ¶¶ 1.35, 3.2.

### D.    Total Value of the Common Fund of Benefits

Class counsel estimate the total value of the common fund of monetary and non-monetary benefits to exceed $4 million, as follows:

a.    **Non-reversionary monetary fund:** made available to 171,915 Subclass 1 class members - $1,203,405.00. *See* SA ¶¶ 1.45, 2.2.

b.    **Privacy Monitoring Product:** provided to all 171,915 Subclass 1 class members and 907,737 Subclass 2 class members at no cost ($265 annual value). *See* SA ¶ 1.34. *See also*, G. Thompson Decl.

c.    **Injunctive Relief Benefits:** the value of injunctive relief secured under the Settlement is considerable. To begin, this lawsuit was the catalyst for change in that, shortly after the Original Complaint was filed, Defendant stopped the use of tracking technologies as alleged in the complaint. *See* Robinovitch Decl. ¶ 19. Moreover, under the Settlement, Defendant has agreed to refrain from reestablishing those practices for a period of five years. *See* SA ¶¶ 1.23, 2.2. As the conduct was alleged to result in $10,000 in statutory damages per offense, the value of the injunctive relief stopping the continuation of the alleged violations into the future is substantial.

d.    **Administrative Expense Fund:** the separate fund created by Defendant in the amount of $300,000.00 to pay Settlement Administration Expenses for the Settlement Website, Claims Administration and Other Administrative Costs, including the Claims Administrator's service charge. SA ¶¶ 1.2, 1.30, 2.2(d).

e.    **Subclass 2 and 3 Attorneys Fee Fund:** Defendant has agreed to create a separate fund in the amount of $750,000.00 to pay attorneys' fees and costs of Class Counsel attributable to the work done to secure the settlement benefits for Settlement Subclass 2 and Settlement Subclass 3. *See* SA ¶ 2.2(e).  This is a benefit secured for those class members as the fees do not have to be paid by those class members directly or as a deduction from benefits received.

6

## E.    The Notice and Claims Administration Plans

Settlement Class Counsel, subject to approval by the Court, has selected Angeion Group, LLC ("Angeion") to be the Settlement Administrator and fulfill all duties set forth in Section 7 of the Settlement Agreement. *See* SA ¶¶ 1.42, 7.1-7.10.  Angeion Group is a well known and reputable claims administrator with experience handling the administration of national and international class actions.  *See generally*, www.angeiongroup.com; Declaration of Steven Weisbrot at ¶¶ 3-17; Robinovitch Decl. ¶¶ 48-49. Angeion will provide the Class with Notice and administer the Claims. Angeion was selected by Settlement Class Counsel following a competitive bidding process where three reputable class action notice and settlement administration firms submitted proposals. *See* Robinovitch Decl. ¶ 49. Angeion's service fees are to be paid by the separate Administrative Expense Fund.  SA ¶ 1.2.

The notice plan for this Settlement is robust and designed to reach as many Settlement Class Members as possible. *See* SA ¶¶ 4.1(a)-(f); Declaration of Steven Weisbrot at ¶¶ 18-20, 39-40.  First, Angeion will provide direct notice to all Tier 1 and 2 Settlement Class Members by emailing them the Email Notice. *See* SA ¶¶ 4.1(b) and Exh. B.  If the email "bounces-back" or is otherwise non-deliverable, a Postcard Notice with be sent via U.S. Mail. *See* SA ¶¶ 4.1(b) and Exhs. F and H.  At least two reminder notices will be sent. *See* SA ¶¶ 4.1(c)-(d) and Exh. B Angeion will also provide a Claim Form to Settlement Class Members requesting the same through writing or by telephone, as well as making it available on the Settlement Website that Angeion will develop. *Id.* ¶¶ 4.1(f).

The Settlement Website will host many important documents in the case including, the operative Complaint, Long Form Notice, electronic Claim Form, the Settlement Agreement, a set of Frequently Asked Questions, and a method to ask questions regarding the settlement. SA ¶¶ 4.1(f). The Long Form and short form Email Notices clearly and concisely inform Settlement Class Members that they may do nothing and be bound by the Settlement, exclude themselves, object to the terms, or make a claim by completing and returning an electronic claim form. SA ¶¶ 4.1 and Exhs B and D. The  Settlement Administrator will also establish a 24-hour toll-free helpline to answer questions about the Settlement. SA ¶ 4.1(f).

For the benefit of members of Settlement Subclass 3 the Settlement Administrator will develop: (1) an online media plan; and (2) post a notice on Defendant's website (www.lifestance.com), to notify persons of the Settlement terms. *See* SA ¶¶ 4.1(d). These online banner notices will provide Class Members with a link to the Settlement Website where they can obtain additional information, submit a claim or ask questions. SA, ¶ 4.1(f). This method of providing notice is reasonable and necessary as Defendant does not have email or other contact information for members of this injunctive relief only Settlement Subclass 3. Finally, Angeion will be responsible for processing all Claims for payments from the Settlement Fund and exclusions requested, determining eligibility and validity, and for disbursing funds from the Settlement account directly to Settlement Class Members. Angeion must also report to the Court that it satisfied its notice obligations. SA ¶¶ 1.42, 7.1-7.10

**F.     Opt Out Procedure and Opportunity to Object.**

A class member who wishes to opt out or to exclude themselves from the Settlement may do so by the Exclusion Deadline, which shall be sixty (60) days after the Notice Date or such other date as ordered by the Court. *See* SA ¶¶ 1.28, 6.1-6.3; *see also* Fed. R. Civ. P. 23(c)(2) (stating that class members must receive notice of their right to request exclusion from the class). Additionally, any Settlement Class Member who wishes to object to the Settlement or to enter an appearance through counsel, may do so by the Objecting Deadline, which shall be designated as sixty (60) days after the Notice Date or such other date as ordered by the Court. *See* SA ¶¶ 1.26, 5.1-5.3.

**G.     Attorneys' Fees & Costs.**

Under the Settlement, attorneys' fees and litigation expenses in the amount approved by the Court, if any, will be funded in two ways.  SA ¶ 10.1.  First, Class Counsel shall be permitted to petition the Court for attorneys' fees and costs incurred and expended in obtaining and securing the Settlement Results for the Settlement Subclass 1 common fund set forth in Paragraph C(1). *See* SA ¶ 10.1(b). Second, Defendant will establish a separate fund of $750,000.00 to fund payment to Class Counsel as attorneys' fees and costs attributable to their work securing the Settlement Benefits for Tier 2 and Tier 3 Subclass members. *See* SA ¶ 10.1(a).

8

In total, Class Counsel intends to seek an award of attorneys' fees and costs of: (1) 25% of the cash portion of the Settlement Subclass 1 Fund (SA ¶ 1.44, 10.1(b)), plus costs, and (2) the $750,000 separate fund for work related to securing relief for Settlement Subclass 2 and Subclass 3. SA ¶¶ 2.3 (c), 10.1 (a) and (b).  The award of attorneys' fees and costs will be sought by Settlement Class Counsel pursuant to the percentage of the fund, lodestar plus multiplier, fee-shifting and catalyst methods of determining appropriate fees.

## III.    DISCUSSION

### A.    The Proposed Settlement Warrants Preliminary Approval as a Fair, Adequate, and Reasonable Compromise of Disputed Issues.

As a matter of public policy, settlement is strongly favored, "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Wood v. Ionatron, Inc*., 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) ("In the context of a class action, the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest") (citations omitted). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims.

Parties settling a class action must seek a court's approval of the settlement. *See* Fed. R. Civ. P. 23(e). That approval can only issue "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 127 (9th Cir. 1998); *In re Apollo Grp. Inc. Sec. Litig*., 2012 WL 1378677, at *1 (D. Ariz. Apr. 20, 2012).  Review of a proposed class action settlement has two-stages. First, the parties submit the settlement to the Court for a preliminary fairness evaluation. If acceptable, the Court then directs notice to absent class members and a period to respond with comments and claim submissions. *See Hashw v. Dep't Store Nat. Bank.*, 182 F. Supp. 3d 935, 943 (D.Minn., 2016). Then, after the class has been notified and has had the opportunity to consider

the settlement, the Court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." Fed. R. Civ. P. 23(e).

Under Rule 23(e)(1)(B), preliminary approval of a class action settlement turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, provides that a proposed class settlement may be approved "only on finding that it is fair, reasonable, and adequate" after considering the following factors: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).  In addition, courts in the Ninth Circuit also consider:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class    members    to    the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) (discussing the *Hanlon* factors).

The Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits only if the action proceeds. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").

As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2) as well as the applicable Ninth Circuit factors.

### 1. Plaintiffs and Class Counsel Have Adequately Represented the Class.

The adequacy inquiry, as required by Rule 23(e)(2)(A), turns on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, there can be no question that Plaintiffs and Class Counsel have adequately represented the Class during the course of this Action including, but not limited to, the Settlement process.

Here, Plaintiffs' privacy claims are typical of and coextensive with the claims of the Class, and they have no antagonistic interests. See, Robinovitch Decl. ¶¶ 2, 12-13. Rather, Plaintiffs' "interest[s] in obtaining the largest possible recovery is aligned with the interests of the rest of the . . . [c]lass members." *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019).

Moreover, Class Counsel has diligently prosecuted this Action by, *inter alia*, conducting an extensive factual investigation prior to and in the course of preparing the Original Complaint and Amended Complaint; preparing an opposition to Defendant's motions to dismiss; engaging in formal and informal discovery to obtain information necessary to negotiate the settlement terms; reviewing confidential data produced by Defendants pursuant to a Federal Rule of Evidence 408 agreement; and both presenting and resolving related disputes with the mediator. *See* Robinovitch Decl. ¶¶ 4-15. These actions, and others, undertaken by Class Counsel demonstrate their adequacy. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding class settlement to be procedurally fair where the "[l]ead [c]ounsel vigorously litigated th[e] action"). The substantial monetary and other benefits secured for the Settlement Class Members is further evidence of adequate representation.

### 2. The Settlement was Negotiated at Arm's Length.

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *2 (noting that "there is no evidence that there has been anything other than a genuine arms-length negotiation in this case following mediation where the parties reached an agreement on the settlement"); *see also In re Volkswagon Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*, 2019 WL 2077847, at *1

("[B]oth sides engaged in a series of intensive, arm's-length negotiations before they reached an agreement in principle to settle."). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See, e.g.*, *In re Banc of Calif. Sec. Litig.*, 2019 WL 6605884, at \*2 (C.D. Cal. Dec. 4, 2019); *In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at \*13 (N.D. Cal. Mar. 31, 2010) ("[A mediator's] participation weighs considerably against any inference of a collusive settlement.").

As required by Rule 23(e)(2)(B), the proposed Settlement was negotiated at arm's length and only reached after the Parties engaged in a protracted mediation process with Judge Segal. *See* Robinovitch Decl. ¶¶ 10-15. This process included the Parties' detailed written submissions, discovery disputes, in-person mediation, and follow-up conferences—the totality of which resulted in the above-described settlement terms through a mediator's proposal. *See* Robinovitch Decl. ¶¶ 10-11. Judge Segal supervised this process at each step. *See id.* Thus, the proposed Settlement was "the product of serious, informed, and noncollusive negotiations." *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at \*4-\*5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*").

### 3. The Settlement Provides Significant Relief for the Class Representing a Fair, Adequate and Reasonable Compromise of Disputed Issues.

As described below, a number of considerations lead to the conclusion that the benefits provided under the Settlement to resolve risky and uncertain claims is fair, adequate, and reasonable for the Settlement Class Members.

### a. The Costs, Risks, and Delay of Further Litigation.

The proposed Settlement provides (more than) adequate relief to the Class and satisfies Rule 23(e)(2)(C)(i) and Ninth Circuit factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation." *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e)(2)(C)(i). The aggregate monetary and non-monetary relief secured provides significant, immediate, and certain benefit to the Class, especially considering the costs, risks, and delay posed by continued litigation. *See, e.g.*, *Salazar v. Midwest Serv. Grp., Inc.*, 2018 WL 3031503, at \*6 (C.D. Cal. June 4, 2018) (finding a "[s]ettlement [a]greement's

elimination of risk, delay, and further expenses weighs in favor of approval."). While Plaintiffs remain confident in their ability to prove the claims alleged in the Amended Complaint, they are also cognizant of the risks that pixel tracking actions under the ECPA and other privacy laws pose to plaintiffs.[3] Just recently, the Ninth Circuit affirmed the dismissal in one privacy tracking cases while reversing the dismissal of another. *Compare Gutierrex v. Converse, Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming dismissal of CIPA claim), *with Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) (reversing dismissal of CIPA claim).

Moreover, in order to obtain any recovery for the Class as a whole, Plaintiffs would still need to prevail at class certification, summary judgment, pretrial motions, trial, and subsequent appeals, a process that would likely extend for several years. While certain courts have certified privacy law cases for class action treatment, that outcome is far from guaranteed. *See, e.g.*, *Frasco v. Flo Health, Inc.*, - F.R.D. - , 2025 WL 1433825 (N.D. Cal. May 19, 2025) (granting class certification). Settlement is favored here where the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017), *aff'd* 881 F.3d 1111 (9th Cir. 2018).

The Settlement is appropriate when comparing the present case to comparable cases challenging the use of pixel tracking on healthcare companies' websites. While litigation involving the alleged use of tracking technologies is relatively new, comparative benchmarks indicate that the value of this action is substantial. Several similar cases with generally

---

[3] While courts have issued decisions upholding ECPA, CIPA, and other claims against healthcare providers who placed tracking pixels on their websites, certain decisions also go the other way. *See, e.g.*, *Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) (denying motion to dismiss in part); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) and denying motion to dismiss invasion of privacy, breach of implied contract, unjust enrichment, negligence & ECPA causes of action); *McCulley v Banner Health*, 23-cv-00985 (May 10, 2024, D. Ariz.) (denying motion to dismiss, in part); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (Nov. 14, 2024, W.D. Wash.) (same); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) (same). *But see*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015); *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d Cir. 2016); *Kurowski v. Rush System for Health*, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023)

comparable class sizes settled for amounts in the range of approximately $4 to $6 per class member. The following chart identifies the similar settlements, including the settlement amount, class size, and per class members recovery:

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|---|---|---|---|---|
| *John v. Froedtert Health, Inc.* | No. 23-CV-1935 (Wis. Cir. Ct. Milwaukee Cnty.) | $2,000,000 | 459,044 | $4.35 |
| *In re Advocate Aurora Health Pixel Litig.* | No. 22-CV-1253 (E.D. Wis.) | $12,225,000 | 2,540,567 | $4.81 |
| *In re Novant Health, Inc.* | No. 1:22-cv-00697 (M.D.N.C.) | $6,660,000 | 1,361,159 | $4.85 |
| *Doe v. Partners Healthcare System, Inc.* | No. 19-1651 (Mass.Super.) | $18,400,000 | 3,000,000 | $6.13 |
| *In re Group Health Plan Litig.* | No. 23-cv-267 (D. Minn) | $6,000,000 | 978,305 | $6.13 |

Other recent Meta Pixel settlements include:

- *Bustos v. Riverside Medical Clinic*, non-reversionary common fund of $1,750,000 for a class of approximately 95,000 individuals or roughly $18.42 per class member No. CVRI2203466 (Riverside Cty. Sup. Ct.)

- *Ocampo v. Lifebridge Health*, where a motion for preliminary approval was granted September 23, 2024 for a $2 million settlement on behalf of just under 80,000 class members or $25.11 per person. No. C-03-CV-23-001095 (Balt. Cnty. Circ. Ct., MD);

- *Doe & Doe v. Wood County Hospital*, which settled a case on behalf of approximately 17,000 class members for $1,475,000 or approximately $88 per class member. No. 23-CV-160 (Sandusky Cnty., Ohio);

- *Beauford v. Johns Hopkins*, settled on behalf of a class of approximately 780,000 class members for $16.50 per class member. No. C-3-CV-23-000501 (Balt. Circ. Ct., MD); and

- *Koskosky v. Davita, Inc.*, which settled for $3,800,000 on behalf of a small class of

14

portal users, comprising only approximately 30,000 patients (Broward Cnty. Circ. Ct., FL).

Notably, the court in *Kurowski v. Rush Sys. for Health,* recently approved a settlement that provided only injunctive relief to the class. *Kurowski v. Rush Sys. for Health,* No. 22-cv-5380 (N.D. Ill., Dec. 17, 2024) (Order granting final approval to class action settlement providing only injunctive relief and stating "Pursuant to the Settlement Agreement, ¶ 2.1, and for a period of two years, Rush shall remove any remaining vestiges of the following tracking technologies on Rush's Websites….").

The Settlement here balances the risks, costs, and delay inherent in complex cases evenly with respect to all Parties. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial and appeals, the Settlement is in the Class's best interest as it secures Settlement benefits for those who wish to receive them, while eliminating the risk of a complete non-recovery. For those Class Member who wish to continue litigating in search of a greater recovery, the Settlement provides opt-out rights and a manner to do so.

### b. The Proposed Method for Distributing Relief is Effective.

The Claims process is also effective and includes a standard Claim Form and allocation plan described in Section 2 of the Settlement Agreement. The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013).

Here, the Claim Form is necessary to confirm the Class Member's current address and payment method information. The Settlement also provides for a thorough claim review process by the Settlement Administrator to maintain the integrity of the Settlement by confirming that only valid claims are accepted and a mechanism for determining how deficiencies are addressed. SA ¶¶ 1.41, 7.2-7.3. To equitably allocate the Settlement benefits among Class Members according to the strength of a Claim, the Settlement Class is divided into three subclasses. SA ¶ 2.2. The allocation plan governs how the benefits will be distributed to Class Members.

Specifically, the members of Settlement Subclass 1, who have the strongest claims and contact information within Defendant's possession, will share *pro rata* in the $1.2 million dollar Settlement Subclass 1 Fund, provided they submit a Claim Form prior to the deadline. The monetary fund will be exhausted through the *pro rata* distribution. To the extent any checks are uncashed or residual funds otherwise result, the money will be distributed to appropriate *cy pres* beneficiaries that support consumer's privacy rights and satisfy the standard in *Dennis v. Kellogg,* 697 F.3d 858 (9th Cir. 2012).[4] Members of Settlement Subclass 1 and Settlement Subclass 2 need not submit a Claim Form to receive the Privacy Monitoring product at no cost. Instead, a code will be sent to those class members allowing them to activate the Privacy Monitoring product. Finally, members of Settlement Subclass 3 will receive Injunctive Relief Benefits, which ensures that if they visit Defendant's website again over the next five years there will be no user behavior monitoring. SA ¶ 1.22.

The allocation plan is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). Members of each subclass are subject to the same formula for

---

[4] Here, two entities have been selected as *cy pres* recipients, the Privacy Rights Clearinghouse and the Center for Democracy and Technology. SA ¶ 1.11. Review of their respective websites show that they are appropriate recipients of any *cy pres* funds as they support consumer rights in the privacy area and therefore are proper substitutes for the class under *Dennis v. Kellogg. see also* www.prviacyrights.org. ("Privacy Rights Clearinghouse is a nonprofit organization focused on increasing access to information, policy discussions and meaningful rights so that data privacy can be a reality for everyone. Founded in 1992 to help people understand their rights and choices, we are one of the first and only organizations to focus exclusively on data privacy rights and issues."); https://cdt.org ("CDT works to strengthen individual rights and freedoms by defining, promoting, and influencing technology policy and the architecture of the internet that impacts our daily lives.").

distribution of the Settlement within their subclass as other members of the same subclass. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at \*18 (D. Or. Mar. 19, 2019) ("The Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").

### 4. The Views of Class Counsel.

Another relevant factor is the experience of counsel who determined that settlement was appropriate in this matter. *Wood*, 2009 WL 10673479, at \*4. The law firms involved in this case have considerable experience in the applicable area of law and in handling similar actions and support the Settlement as a reasonable compromise of disputed issues. Robinovitch Decl. ¶ 12.

### 5. Extent of Discovery and the Stage of the Proceedings.

As noted, the Parties exchanged formal initial disclosures and propounded informal discovery leading up to the mediation. This process allowed Class Counsel to have sufficient information to make an informed decision as to the reasonableness of the Settlement at the mediation. Further confirmatory discovery regarding other information exchanged will be completed to ensure that the Settlement is based on a proper factual record prior to final approval. SA ¶ 12.7.

### 6. Absence of Evidence of Collusion.

The Ninth Circuit has held that "[b]efore approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties[.]" *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985). In this case, the Settlement negotiations were conducted at arm's length with the assistance of a well-respected, neutral mediator. *See* Robinovitch Dec, ¶ 11. *see also Wood*, 2009 WL 10673479, at \*4 (stating that "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citation omitted).

**7.  The Relief Provided in the Settlement is Adequate Taking into Account all Agreements Related to the Settlement.**

The relief provided to the Settlement Class is also adequate under Rule 23(e)(2)(C)(iv) given that the agreements required to be identified under Rule 23(e)(3) treat the Settlement Class fairly. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at \*8 (N.D. Cal. July 22, 2019) (finding that the absence of clear sailing fee provisions and no reversion of funds to the defendants support approving the settlement).

Here, following the mediation the Parties entered into a Term Sheet concerning their agreement in principle, which was formally memorialized in the Settlement Agreement. No other agreements exist. The Settlement does not contain a reversion to Defendant, and the Settlement is not contingent on any particular fee award to Class Counsel. All the agreements treat the Settlement Class fairly and support a finding that the relief provided by the Settlement is adequate.

**B.      The Notice Plan is Reasonable and Satisfies Due Process.**

The content of the proposed Notice forms here are all "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Courts have held that a proposed "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (cleaned up). *See also*, *Avila v. LifeLock Inc.*, 2020 WL 4362394, at \*1 (D. Ariz. July 27, 2020) (approving class settlement, notice plan, and attorneys' fees).

The proposed Notice and claims administration process is effective and in accord with Rule 23(e)(2)(C)(ii) and due process requirements. *See generally* Declaration of Steven Weisbrot of Angeion Group. The Notice plan includes email Notice to all those who can be identified with reasonable effort. *See* SA § 4. For members of Settlement Subclass 1 and

18

Settlement Subclasses 2, those persons will receive direct notice via email because Defendant maintains their email addresses. This direct Notice plan is sufficient.

For members of Settlement Subclass 3, those who browsed the LifeStance website but did not create a registered account or book appointments, notice is appropriately accomplished through publication because Defendant does not possess their email addresses. Courts routinely approve publication notice in such circumstances. *See, e.g.*, *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014); *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). In particular, where class members have only dealt with defendant onlines, so direct contact information is unavailable or incomplete, courts have approved settlement notices through online media campaigns. *See, e.g.*, *Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476, 491-92 (2024) (finding online publication campaign sufficient); *Brooks v. Pressed Juicery, Inc.*, 336 F.R.D. 484, 493 (E.D. Cal. 2020) (similar); *Scheider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595 (N.D. Cal. 2020) (same).

The Notice plan will be supplemented by a Settlement-specific website where key documents will be posted, including the Amended Complaint, Order on the Motion to Dismiss, Settlement Agreement, Notice, Claim Form, and Preliminary Approval Order (if approved). *See* SA § 4. The Notice will provide links to the Settlement Website where the Claim Form can be downloaded and submitted. SA ¶ 4.1(b) and (f). The Claim Form is relatively straightforward and able to be completed in a few minutes, providing the Settlement Administrator the material information it needs to process claims—Class Members current address and payment information. *See* SA ¶¶ 1.6, 2.2, Exh. A. Settlement Subclass 1 and 2 members need not complete a Claim form to receive the Privacy Monitoring. Tier 3 subclass members need not complete a claim form to receive the injunctive relief.

Finally, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed Notices all satisfy this requirement, as they inform Class Members of the fees to be sought. Class Counsel's fee petition will also be filed

19

prior to the objection deadline, allowing the class the opportunity to comment. SA ¶ 10.2.

For these reasons, the proposed notice plan is reasonable and should be approved.  See, generally, S. Weisbrot Declaration at ¶¶ 39-40. .

## IV. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CONDITIONAL CLASS CERTIFICATION AT THE SETTLEMENT STAGE.

Under the Settlement, the Parties have agreed to conditional class certification for purposes of settlement. SA ¶ 9.3. Despite the stipulation, the Court must be satisfied that all applicable requirements of Rule 23 are met. *See, e.g., General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is there be no trial," but must still ensure satisfaction with other Rule 23 requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class satisfies each of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3) (predominance and superiority).

### A. All Fed. R. Civ. P. 23(a) Requirements are Satisfied.

#### 1. The number of Settlement Class Members satisfy numerosity.

The numerosity requirement is met where the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'" *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016). The Settlement Class here is sufficiently numerous because the proposed Class consists of approximately 171,915 Settlement Subclass 1 members, 907,737 Settlement Subclass 2 members, in addition to the Settlement Subclass 3 members. *See* Robinovitch Decl. ¶ 18. This far exceeds numerosity's minimum requirements.

Further, the class is objectively defined and ascertainable.  While Defendant only has email addresses for members of Settlement Subclass 1 and 2, members of Settlement Subclass 3 are still ascertainable and able to self-identify themselves.

**2.  There are questions of law and fact common to the Settlement Class.**

Rule 23(a)(2)'s commonality requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 428 (D. Ariz. 2013). "Commonality exists where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class.'" *Fleming v. Impax Laby's*, 2021 WL 5447008, at *6 (N.D. Cal. Nov. 22, 2021) (cleaned up). As long as "there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2).' *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (cleaned up); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 359 (same).

Here, numerous questions of law and fact will determine LifeStance's liability to the Settlement Class. In particular, LifeStance's alleged violations of privacy statutes and laws, arise from its common installation of third-party pixel codes. Common evidence dictate the resolution of every Settlement Class Member's claim. As explained in another pixel-tracking case:

> The central common questions in this case-whether Virginia Mason bugged its web-property; whether Virginia Mason caused tracking cookies used by third parties to be deposited on and accessed from Plaintiffs' and class members' computing devices, whether Virginia Mason disclosed Plaintiffs' and class members' personally identifiable data and communications to third parties, and whether Virginia Mason accurately disclosed this practice in its privacy policies-will be answered with common evidence, including expert testimony and testimony of Virginia Mason employees about the source code on the web-property and the privacy policy disclosures, internal Virginia Mason documents, and evidence related to the third parties that obtained class members' data and communications. Any one of these common questions is sufficiently dominant to satisfy predominance.

*Doe v. Virginia Mason Med. Ctr.*, 2021 WL 12295937, at *1 (Wash. Super. Sep. 28, 2021) ("*Virginia Mason II*").  The same reasoning applies here.

**3.  The Class Representatives' claims are typical of Class Members' claims.**

Rule 23(a)(3) requires that the claims of the class representatives are typical of those of the class. Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin*, 617 WF.3d at 1175 *citing Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based

21

on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted); *First Solar*, 295 F.R.D. at 428. The requirement is undemanding, requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class. *Wolin,* 617 F.3d at 1175. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims are typical of the Settlement Class because they arise from the same event—the installation of pixel codes on common website pages—and are based on the same legal theories and causes of action. Further, Plaintiffs' and Settlement Class Members' injuries are all connected to the same alleged conduct—the pixel installation. Thus, because Plaintiffs' claims arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and [their] claims were based on the same legal theory," *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted), Plaintiffs' claims are typical.

### 4. The proposed Class Representatives will adequately protect the interests of the Settlement Class.

Finally, the named plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. *See Hansberry v. Lee,* 311 U.S. 32, 42–43 (1940). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Hanlon*, 150 F.3d at 1020 citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978). Here, Plaintiffs do not have any interests antagonistic to other Settlement Class Members and have retained lawyers who are abundantly qualified and experienced in class actions generally, and in data privacy cases concerning tracking technologies specifically. *See*, Robinovitch Decl. ¶ 41, Exh. 2. Accordingly, the

requirement is met.

**B.    All Fed. R. Civ. P. 23(b)(3) Requirements are Satisfied.**

After establishing the Rule 23(a) requirements, plaintiffs must show the proposed class satisfies at least one subsection of Rule 23(b). *See* Fed. R. Civ. P. 23(b); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement satisfies these requirements.

**1.    Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.**

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 citing Wright, Miller & Kane, *supra,* § 1778. District courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable traits." *Amchem Prods., Inc.*, 521 U.S. at 615.

Here, there are common questions of law and fact pertaining to Plaintiffs' alleged statutory and common law privacy claims as well as other alleged statutory violations. In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Settlement Class Members. All of the issues related to the alleged privacy claims and statutory violations from the pixel installation can be resolved on a class-wide basis. First, there is the common question of whether the alleged communications

23

and information that were transmitted as a result of the pixel installation were private or confidential information. Second, there are common questions concerning whether the Settlement Class should have had an expectation of privacy in interacting with the websites at issue. These common issues overwhelmingly predominate over any remaining individualized issues. *See, e.g.*, *Virginia Mason II*, 2021 WL 12295937, at *1; *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *6-16 (N.D. Cal. Nov. 26, 2024) (certifying a class of customers whose information was captured by "session replay" technology which operates in a way similar to Meta Pixels and other Tracking Tools, finding predominance inquiry satisfied); *Jancik v. WebMD LLC*, 2025 WL 560705, at *10 (N.D. Ga. Feb. 20, 2025) (granting motion for class certification in a class action alleging WebMD disclosed user data through the Meta Pixel, finding that the same issues would predominate each class member's claim).

### 2. A class action is superior for fair and efficient adjudication of the Action.

A court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175. Rule 23(b)(3)'s non-exclusive factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Litigating the same claims of hundreds of thousands of Class Members and requiring presentation of the same evidence and expert opinions each time is inefficient. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments in courts throughout the nation, where thousands of website users are at issue, and therefore will promote judicial economy and efficiency. Additionally, Settlement Class Members are individuals whose damages may be small, but the costs to achieve recovery would be large. The awards of these Settlement Class Members would not justify the

high costs of individually pursuing their claims. Finally, the class claims are able to efficiently managed through common discovery and claims analysis.  Because class treatment is superior to individual litigation, superiority is satisfied.

As all requisite elements of Rules 23(a) and 23(b)(3) are satisfied, class certification for purposes of settlement is appropriate.

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CO-CLASS COUNSEL AND PLAINTIFFS AS CLASS REPRESENTATIVES.

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1) & (g)(4). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Proposed Class Counsel has extensive experience in prosecuting consumer class actions in general, and tracking technologies cases in particular. *See* Robinovitch Decl. ¶¶ 39, 41, 46.  As a result of their zealous efforts in this Action, proposed Class Counsel have secured substantial relief for the Settlement Class Members. Thus, the Court should appoint Hart L. Robinovitch and Ryan J. Ellersick of Zimmerman Reed LLP and David S. Almeida and Britany A. Kabakov of Almedia Law Group, LLC as Class Counsel. In addition, Ms. Strong and Ms. Yick should be appointed Class Representatives due the typicality of their claims and efforts to assist Class Counsel in securing the relief for the Settlement Clas under the Settlement. SA ¶ 1.8.

## VI.   CONCLUSION

For these reasons, Settlement Class Counsel respectfully ask the Court to enter an Order: (1) certifying the Settlement Class for purposes of settlement; (2) appointing Plaintiffs Montana Strong and Debra Yick as Class Representatives; (3) appointing the undersigned counsel as Settlement Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of Notice to the Settlement Class; (6) appointing

Angeion Group as Settlement Administrator; (7) directing that Notice to the Settlement Class be disseminated by the Settlement Administrator in the manner described in the Settlement Agreement; (8) establishing deadlines for Settlement Class Members to request exclusion from or file objections to the Settlement; and (9) setting the proposed schedule for completion of further settlement proceedings, including scheduling the Final Approval Hearing.

Respectfully submitted,

Dated: August 29, 2025

**ZIMMERMAN REED LLP**

By: *s/ Hart L. Robinovitch*

Hart L. Robinovitch
Ryan J. Ellersick
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400
Facsimile: (480) 348-6415
hart.robinovitch@zimmreed.com
ryan.ellersick@zimmreed.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida*
Britany A. Kabakov*
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

* *Pro hac vice* granted

*Attorneys for Plaintiffs & the Classes*

26