Hart L. Robinovitch (AZ SBN 020910)
Ryan J. Ellersick (AZ SBN 038805)
**ZIMMERMAN REED LLP**
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400
Facsimile: (480) 348-6415
hart.robinovitch@zimmreed.com
ryan.ellersick@zimmreed.com

David S. Almeida (*Admitted pro hac vice*)
Britany A. Kabakov (*Admitted pro hac vice*)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

*Attorneys for Plaintiffs & the Classes*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Montana Strong and Debra Yick, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>LifeStance Health Group, Inc. d/b/a LifeStance, a Delaware corporation,<br><br>Defendant. | Case No. 2:23-cv-00682<br><br>*Assigned to the Honorable Krissa M. Lanham*<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED** |

1

## TABLE OF CONTENTS

2   MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES ................................................1

3   I.    INTRODUCTION ................................................................................................1

4   II.   SETTLEMENT NEGOTIATIONS.......................................................................4

5   III.  REVISED SETTLEMENT TERMS ....................................................................5

6      A.   The Settlement Class...........................................................................................5

7      B.   Class Member Benefits under the Settlement...................................................6

8      C.   Settlement Administration & Notice to the Class. ..........................................7c

9      D.   The Claims Procedure, Objections & Opt-Outs................................................8

10     E.   Service Awards and Attorneys' Fees and Costs. ..............................................9

11  IV.   THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CONDITIONAL
        CLASS CERTIFICATION AT THE SETTLEMENT STAGE.................................................10

12
       A.   All Rule 23(a) requirements remain satisfied. ...............................................10
13
          1.   The number of Settlement Class Members satisfy numerosity. ................................10
14
          2.   There are questions of law and fact common to the Settlement Class. ...................10

15        3.   The Class Representatives' claims are typical of Class Members' claims.............................11

16        4.   The proposed Class Representatives will adequately protect the interests of the Settlement
               Class..........................................................................................................................122

17     B.   All Rule 23(b)(3) requirements remain satisfied. ...............................................12

18        1.   Common questions of law & fact predominate over any questions affecting only individual
               members of the Settlement Class. ..................................................................................12
19
          2.   A class action is superior for fair and efficient adjudication of the Action. ........................13
20  V.    THE PROPOSED SETTLEMENT IS A FAIR, ADEQUATE, AND REASONABLE
        COMPROMISE OF FACTUAL AND LEGAL ISSUES. .............................................................14
21
       A.   Plaintiffs and Class Counsel have adequately represented the Class...............................15
22
       B.   The Settlement was negotiated at arm's length. .............................................................16
23     C.   The Settlement provides significant relief for the Class representing a fair, adequate, and
            reasonable compromise of disputed factual and legal issues. .......................................17
24        1.   The costs, risks, and delay of further litigation. .............................................................17

25        2.   The value of the Settlement compared to the value of the case. .............................19
          3.   The proposed method for distributing relief is effective and fair. .............................22
26        4.   The views of Class Counsel..........................................................................................25
27        5.   Extent of discovery and the stage of the proceedings. .............................................25
          6.   Absence of evidence of collusion. .............................................................................25
28        7.   The relief provided in the Settlement is adequate taking into account all agreements related

to the Settlement. ...................................................................................................... 25

D.       The Notice plan is reasonable and satisfies due process. ............................. 26

VI.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CO-CLASS COUNSEL AND
      PLAINTIFFS AS CLASS REPRESENTATIVES. ................................................................27

VII. CONCLUSION .................................................................................................................27

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................. 10, 12

*Avila v. LifeLock Inc.*,
  2020 WL 4362394 (D. Ariz. July 27, 2020) ........................................... 26

*Campbell v. Facebook*,
  951 F.3d 1106 (9th Cir., 2020) ................................................................ 24

*Ciuffitelli v. Deloitte & Touche LLP*,
  2019 WL 1441634 (D. Or. Mar. 19, 2019) .............................................. 24

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................. 23

*Dennis v. Kellogg*,
  697 F.3d 858 (9th Cir. 2012) ................................................................... 24

*Doe v. Virginia Mason Med. Ctr.*,
  2021 WL 12295937 (Wash. Super. Sep. 28, 2021) ................................ 11, 13

*Doe v Eating Recovery Ctr. LLC*,
  2025 WL 2971090 (N.D. Cal., Oct. 17, 2025) ........................................ 18

*Ficalora v. Lockheed Cal. Co.*,
  751 F.2d 995 (9th Cir. 1985) ................................................................... 25

*Fleming v. Impax Laby's Inc.*,
  2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................................ 10

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025) ............................................................ 18, 20

*Graham v. DaimlerChrysler Corp.*,
  34 Cal.4th 553 (2004) .............................................................................. 24

*Gutierrez v. Converse, Inc.*,
  2025 WL 1895315 (9th Cir. July 9, 2025) .............................................. 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................. 12, 14, 15, 17

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992) ..................................................................... 11

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ........................................ 10

*Holeman v. Neils*,
  803 F. Supp. 237 (D. Ariz. 1992) ........................................................... 19

*In re Advoc. Aurora Health Pixel Litig.*,
  740 F. Supp. 3d 736 (E.D. Wis. 2024) .................................................... 4

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................... 14, 16

i

*In re Atmel Corp. Derivative Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ........................................................ 17
*In re Banc of Calif. Sec. Litig.*,
  2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .......................................................... 17
*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................................... 25
*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) .................................................................................... 18
*In re Grp. Health Plan Litig.*,
  709 F. Supp. 3d 707 (D. Minn. 2023) .............................................................. 3, 18
*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................................... 23
*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................... 18
*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) .................................................................................... 18
*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 23
*In re Solara Med. Supplies Data Breach Litig.*,
  2022 WL 1174102 (S.D. Cal. Apr. 20, 2022) ........................................................ 17
*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................................ 14
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) .................................................. 16, 17
*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) .......................................................... 13
*Jones v. Bank of Am., N.A.*,
  2020 WL 4819699 (C.D. Cal. Mar. 16, 2020) ....................................................... 19
*Juvera v. Salcido*,
  2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ......................................................... 15
*Kane v. Univ. of Rochester*,
  2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .................................................. 18, 22
*Kurowski v. Rush Sys. for Health*,
  2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ...................................................... 18, 21
*Kurowski v. Rush Sys. for Health*,
  2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ......................................................... 18
*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir.1978) ................................................................................... 12
*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017) .................................................................. 18
*Mikulsky v. Bloomingdale's, LLC*,
  2025 WL 1718225 (9th Cir. June 20, 2025) .......................................................... 18
*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................ 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................ 26

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................ 15

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................ 10

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) .............................................................. 11

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013) ...................................... 23

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................ 26

*Salazar v. Midwest Serv. Grp., Inc.*,
  2018 WL 3031503 (C.D. Cal. June 4, 2018) ........................................ 18

*Shah v. Cap. One Fin. Corp.*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) ................................................ 18

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ............................................................ 10

*Smothers v. NorthStar Alarm Servs., LLC*,
  2020 WL 1532058 (E.D. Cal. Mar. 31, 2020) ...................................... 14

*Taylor v. Populus Grp., LLC*,
  2022 WL 3045366 (S.D. Cal. Aug. 2, 2022) ........................................ 19

*Torres v. Prudential Fin., Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ...................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ........................................................ 11, 12

*Wood v. Ionatron, Inc.*,
  2009 WL 10673479 (D. Ariz. Sept. 28, 2009) ................................ 14, 25

**Statutes**

18 U.S.C. § 2510 ......................................................................................... 1
18 U.S.C § 2520(b) & (c) ......................................................................... 3, 19
Cal. Civ. Code § 56.36(b) ........................................................................... 20
Cal. Penal Code § 637.2(a) ......................................................................... 19
N.Y. Gen. Bus. Law § 349(h) ................................................................ 19, 20

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................... 10, 11, 12
Fed. R. Civ. P. 23(b) ............................................................. 10, 12, 13, 14
Fed. R. Civ. P. 23(c) ..................................................................... 8, 26
Fed. R. Civ. P. 23(e) ......................................................... 14, 15, 17, 26
Fed. R. Civ. P. 23(g) ..................................................................... 27
Fed. R. Civ. P. 23(h) ................................................................. 26, 27

**MOTION FOR PRELIMINARY APPROVAL OF**

**REVISED CLASS ACTION SETTLEMENT**

Plaintiffs Montana Strong and Debra Yick hereby move for Preliminary Approval of the Revised Class Action Settlement Agreement and respectfully request that this Honorable Court: (i) conditionally certify the Settlement Class further to Federal Rule of Civil Procedure 23; (ii) appoint Plaintiffs Montana Strong and Debra Yick as Class Representatives and appoint David S. Almeida and Britany A. Kabakov of Almeida Law Group LLC and Hart L. Robinovitch and Ryan J. Ellersick of Zimmerman Reed LLP as Class Counsel; (iii) appoint Angeion Group, LLC ("Angeion") as Settlement Administrator; (iv) direct that Notice be sent to all Settlement Class Members; (iv) set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Petition for Service Awards and Attorneys' Fees and Expenses; (v) schedule a date for a Final Approval Hearing; and (vi) otherwise set all deadlines and requirements set forth in the Settlement Agreement and the proposed Preliminary Approval Order filed herewith and emailed to the Court as a word document. Defendant LifeStance Health Group, Inc. ("LifeStance" or "Defendant") does not oppose the relief sought by this Motion.[1]

**MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This class action lawsuit alleges that LifeStance used tracking technologies to collect and to disclose patient communications and other information to third parties such as Meta Platforms, Inc. and Google LLC in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ("ECPA") and other laws. After additional negotiations following the Court's denial of Plaintiffs' initial Motion for Preliminary Approval, the Parties reached a revised Settlement to resolve all data privacy and security claims asserted against LifeStance based on its alleged use of third-party tracking technologies on its website (the "Website"), https://lifestance.com/ (the "Pixel Installation").

The Settlement is an excellent result for the Settlement Class Members as it (i) provides

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Revised Settlement Agreement (the "Settlement Agreement" or "SA"), attached as **Exhibit 1** to the Declaration of David S. Almeida ("Almeida Decl."), filed in support of this Motion.

them with renumeration tied to the specific harms alleged in the operative complaint, (ii) compares favorably with other class action settlements in similar pixel-related litigation; and (iii) addresses the Court's concerns as set forth in its prior order. *See* Dkt. No. 85.

To begin, the Settlement provides *all* Settlement Class Members with the ability to receive monetary compensation for the harms alleged in the operative complaint. The Settlement creates a non-reversionary, common fund totaling three million, twenty-seven thousand, eight hundred seventy-four dollars and forty-four cents ($3,027,874.44) for the benefit of *all* LifeStance patients. The Settlement divides Settlement Class Members into two subclasses based on their level of engagement with the Website and allocates corresponding relief based on the strength of the claims of each subclass. As a result of the disparities in terms of the relative strength of their claims, the $3 million fund is divided into:

- **<u>Settlement Subclass 1 Monetary Benefit</u>**: comprised of a $1,203,405.00 common fund for the benefit of the approximately 171,915 LifeStance patients who booked appointments on the Website, which equates to $7 per person prior to any pro rata allocation based on claims rate; and

- **<u>Settlement Subclass 2 Monetary Benefit</u>**: comprised of a $1,824,469.44 common fund for the benefit of the 967,737 LifeStance patients who did *not* book appointments on the Website, which equates to $1.885 per person prior to any pro rata allocation based on claims rate.

Each Settlement Class Member—regardless of whether they are in Subclass 1 (appointment sub-class) or Subclass 2 (did not book appointment)—who submits a timely and valid claim is eligible to receive a pro rata share of their respective non-reversionary fund. The pro rata allocation means that each Subclass 1 or 2 Class Member with an Approved Claim is eligible to receive a proportional share of their corresponding fund ($1.2 or $1.8 million less

Settlement Administration Costs[2] as well as any other Court-approved fees or costs[3]) because the alleged injuries could occur when the Settlement Class Member provides information to LifeStance on its Website, if it is then disclosed to third parties and coupled with other data without consent. Because Subclass 2 Members did not take additional steps to book appointments online, the strength of their claims relative to Subclass 1 Members are not as strong and warrant a lesser per person amount ($7 to $1.89), subject to the pro rata allocation. *See, e.g.*, *Reedy v. Everylywell, Inc.*, Case No. 24-cv-2713, Dkt. No. 38 (Aug. 30, 2025, N.D. Ill.) (final approval granted for Non-Sensitive Test Subclass of 1,340,000 persons, totaling $2,360,000.00 (equating to $1.76 per person) and Sensitive Test Subclass of 660,000 persons, totaling $2,640,000.00 (equating to $4 per person).

The benefits secured through this Settlement are substantial particularly when measured against potential liability and litigation risks. While Defendant's alleged conduct, if proven, could have resulted in substantial damages under the ECPA, no court has awarded such damages in a pixel-tracking case. *See* 18 U.S.C § 2520(b) & (c) (providing for damages as "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000" as well as "reasonable attorney's fee and other litigation costs reasonably incurred"). Establishing entitlement to statutory damages under the ECPA and prevailing on their remaining claims would have required Plaintiffs to overcome challenges regarding intent and causation as well as extensive expert discovery and costly technical and damages testimony.

The fact that the monetary relief obtained here is consistent with the recoveries approved in other healthcare pixel-tracking settlements strongly supports preliminary approval as this Settlement is well within the range of reasonableness. *See, e.g.*, *In re Grp. Health Plan Litig.*, Case No. 23-cv-267, Dkt. No. 159 (D. Minn. 2023) (final approval granted for non-reversionary

---

[2] The proposed Settlement Administrator has agreed to cap its costs at $250,000. *See* Declaration of Steven Weisbrot Re: Qualifications of Angeion Group, LLC & the Proposed Notice Plan ("Weisbrot Decl."), ¶ 36.

[3] Plaintiffs' Counsel has agreed to cap any request for attorney's fees at 25%, subject to Court approval ($300,851.25 from Settlement Subclass 1 and $456,117.35 from Settlement Subclass 2). *See* Almeida Decl. 47.

common fund settlement of $6,000,000 for approximately 900,000 people, which equates to approximately $6.67 per person); *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736 (E.D. Wis. 2024) (final approval granted for non-reversionary common fund settlement of $12.25 million for a class of approximately 2.5 million class members, which equates to approximately $4.89 per person).

In addition, the Injunctive Relief Benefits provide meaningful, forward-looking protection that could not have been achieved through monetary damages alone. This Action was the catalyst for Defendant discontinuing the tracking practices challenged in the Original Complaint and adding a cookie banner to its Website, and—through the Settlement—Defendant has now committed not to reinstate those practices for a period of five years. *See* Almeida Decl. ¶ 69; SA ¶ 1.22. The monetary relief and injunctive measures demonstrate that the Settlement provides significant value relative to the uncertain nature of Plaintiffs' claims.

For these reasons, as well as those set forth below, this Court should preliminarily approve the Settlement, conditionally certify the Settlement Class under Rule 23, direct that Notice be sent to all Settlement Class Members in the manner proposed below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Petition for Service Awards and Fee Award, and set a date for a Final Approval Hearing.

## II.    SETTLEMENT NEGOTIATIONS[4]

Following the Court's order denying Defendant's motion to dismiss in January 2025, the Parties began discussing the prospect of settlement and agreed to participate in a private mediation before a third-party neutral, the Hon. Suzanne H. Segal (ret.) of Signature Resolution. Almeida Decl. ¶ 15. As part of the mediation, and to be in a position to thoroughly assess their relative negotiating positions, the Parties exchanged information subject to mediation privileges through informal discovery as well as initial disclosures and provided the mediator with mediation briefing on issues such as the size and scope of the putative class and facts regarding

---

[4] In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, the case summary and procedural history in Plaintiffs' initial Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. *See* Dkt. No. 79.

the strength of Plaintiffs' claims and Defendant's defenses. *Id.* ¶¶ 16, 28, 31.

The Parties engaged in a full-day mediation on April 15, 2025 with Judge Segal (ret.) in Los Angeles, California. *Id.* ¶ 17. Although the Parties did not reach agreement at the mediation, they—after subsequent remote sessions overseen by Judge Segal—came to an agreement, on April 23, 2025, on the material terms of the original Settlement. *Id.* ¶¶ 17-18. The Parties informed the Court regarding the Settlement in principle and turned their efforts towards negotiating and drafting the Settlement Agreement, and related documents.

On August 29, 2025, the Parties filed Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support and exhibits in support. *See* Dkt. Nos. 78-82. On October 6, 2025, the Court denied the initial Motion for Preliminary Approval and allowed the Parties to renew their Motion. Dkt. No. 85. After reviewing the Court's Order, the Parties conferred on numerous occasions to revise the terms of the proposed Settlement and to memorialize the revised Settlement Agreement that is now before the Court. *See* Almeida Decl. ¶¶ 40-41.

## III.    REVISED SETTLEMENT TERMS

Through the Settlement, Plaintiffs and LifeStance have agreed to resolve all claims related to the Pixel Installation on behalf of the Class. If finally approved, Defendant will create a non-reversionary, common fund of monetary benefits valued at $3,027,874.44.

### A. The Settlement Class.

The Settlement divides Settlement Class Members into two subclasses based on their level of engagement or interaction with the Website and allocates corresponding relief to them based on the strength of the claims of each subclass. SA ¶ 1.39. The Settlement defines the "Settlement Class" as all natural persons who are members of Settlement Subclass 1 and Settlement Subclass 2:

(a) **Settlement Subclass 1**: All members of LifeStance's total patient population who booked at least one session through LifeStance's online booking tool, accessed through LifeStance's public website lifestance.com, between March 1, 2020 and April 30, 2023.

**(b)** <u>**Settlement Subclass 2**</u>: All other members of LifeStance's total patient population between March 1, 2020 and April 30, 2023, not including those in Settlement Subclass 1.

*Id.*[5]

### B. Class Member Benefits under the Settlement.

If approved, Defendant will provide Settlement Class Members the following benefits:

**(a)** <u>**Settlement Subclass 1**</u>: all members of Settlement Subclass 1 who timely submit Approved Claim Forms will receive a *pro rata* cash payment from the Settlement Subclass 1 Fund less any amount awarded by the Court to Class Counsel as reasonable Attorneys' Fees and Expenses, Service Awards, and Settlement Administration Expenses as well as Injunctive Relief Benefits. The *pro rata* allocation of the Settlement Subclass 1 Fund is on a per claimant basis not a per appointment or per website visit basis.

**(b)** <u>**Settlement Subclass 2**</u>: all members of Settlement Subclass 2 who timely submit Approved Claim Forms will receive a *pro rata* cash payment from the Settlement Subclass 2 Fund less any amount awarded by the Court to Class Counsel as reasonable Attorneys' Fees and Expenses, Service Awards, and Settlement Administration Expenses as well as Injunctive Relief Benefits. The *pro rata* allocation of the Settlement Subclass 2 Fund is on a per claimant basis not a per appointment or per website visit basis.[6]

SA ¶ 2.2.[7] No unpaid amounts from the Settlement will remain with or revert back to Defendant. *Id.* Any residual funds shall be paid to the Cy Pres Recipients in equal shares. *Id.*[8] In exchange for the consideration above, Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released LifeStance from claims arising from or related to the Pixel Installation at issue in this Action. SA ¶ 3.2.

---

[5]  The Parties have stipulated to the filing of a Third Amended Complaint ("TAC"). SA ¶ 9.2.

[6]  The Revised Settlement replaces the privacy monitory benefit with a cash distribution for Settlement Subclass 2 Members.

[7]  Subclass 3 is no longer included in the revised Settlement Agreement, and any claims those persons may have are not released by this proposal.

[8]  Two entities have been selected as *Cy Pres* Recipients, Privacy Rights Clearinghouse and Center for Democracy and Technology. SA ¶ 1.12. Review of their websites show that they support consumer rights in the privacy area and therefore are proper substitutes for the class under *Dennis v. Kellogg*. *See also* www.prviacyrights.org. ("Privacy Rights Clearinghouse is a nonprofit organization focused on increasing access to information, policy discussions and meaningful rights so that data privacy can be a reality for everyone. Founded in 1992 to help people understand their rights and choices, we are one of the first and only organizations to focus exclusively on data privacy rights and issues."); https://cdt.org ("CDT works to strengthen individual rights and freedoms by defining, promoting, and influencing technology policy and the architecture of the internet that impacts our daily lives.").

### C. Settlement Administration & Notice to the Class.

Settlement Class Counsel, subject to approval by the Court and Defendant's prior approval, has selected Angeion to be the Settlement Administrator. *See* SA ¶¶ 1.38, 7.1-7.10. Angeion was selected by Settlement Class Counsel following a competitive bidding process where three reputable class action notice and settlement administration firms submitted proposals. *See* Almeida Decl. ¶¶ 81-84. Angeion is a well-known and reputable settlement administrator with experience handling the administration of national and international class actions. *See* Weisbrot Decl., ¶¶ 3-17; Almeida Decl. ¶¶ 81-82.

The Notice plan is robust and designed to reach as many Settlement Class Members as possible. *See* SA ¶¶ 4.1(a)-(f). First, Angeion will review and analyze the Class Member contact information by performing a thorough analysis to identify duplicative records, as well as missing/incomplete data fields. *See* Weisbrot Decl. ¶ 21. Angeion will then provide direct notice to all Settlement Class Members by emailing them the Email Notice. *Id.* ¶ 22. As part of the Notice Plan, Angeion will send notice of the Settlement via first class U.S. Mail, postage pre-paid, to all Class Members who did not have a valid email address or whose notice could not be delivered via email and have a mailing address on the Class List. *Id.* ¶ 28. The Notice Plan also contemplates sending reminder email notices to valid email addresses for which the initial email notice was able to be delivered in accordance with the terms of the Settlement. *Id.* ¶ 27.

Moreover, the Settlement Administrator will create a case-specific Settlement Website, where Class Members can easily view information about this Settlement and review relevant documents, including (i) the Long Notice; (ii) Claim Form; (iii) Preliminary Approval Order; (iv) Settlement Agreement; (v) operative Complaint; and, as applicable, (vi) any other materials deemed necessary. *Id.* ¶ 30. The Settlement Website will be designed to be user-friendly to make it easy for Class Members to find answers to frequently asked questions, view dates and deadlines, and will have a "Contact Us" page allowing Class Members to submit questions. *Id.* Class Members will be able to securely submit a Claim Form through a customized portal on the Settlement Website. *Id.*

Further, a toll-free number will be created and provided on the Settlement Website to

apprise Class Members of the rights and options in the Settlement. *Id.* ¶ 32. The number will utilize an interactive voice response ("IVR") system to provide Class Members responses to frequently asked questions and other information regarding the Settlement. *Id.* The toll-free number will be accessible 24 hours a day, 7 days a week. *Id,* Class Members will be able to request a copy of the Long Form Notice and/or Claim Form via the toll-free number. *Id.*

### D.  The Claims Procedure, Objections & Opt-Outs.

In order to receive their *pro rata* portion of the Net Settlement Subclass 1 or Subclass 2 Fund, all Settlement Class Members need to do is complete and submit a valid, timely, and signed Claim Form. SA ¶ 1.2. Claim Forms shall be returned or submitted to the Settlement Administrator online (on the Settlement Website) or via U.S. mail, postmarked by the Claims Deadline set by the Court. *Id.* ¶ 1.7. The Settlement Administrator will review and evaluate all Claims and shall determine their validity, timeliness, and completeness. *Id*. ¶ 2.6.

A Class Member who wishes to opt out or to exclude themselves from the Settlement may do so by the Exclusion Deadline, which shall be sixty (60) days after the Notice Date or such other date as ordered by the Court. *See* SA ¶¶ 1.17, 6.1-6.3; *see also* Fed. R. Civ. P. 23(c)(2) (stating that class members must receive notice of their right to request exclusion from the class). To exercise the right to be excluded, a Settlement Class Member must timely send a written request for exclusion to the Settlement Administrator, providing (i) his or her full name, current address, telephone number, and email address, (ii) signature (digital or handwritten), (iii) the name and/or docket number of the Action, and (iv) a statement that he or she unequivocally wishes to be excluded from the Settlement Class for purposes of this Settlement. *Id*. ¶ 6.2.

Any Settlement Class Member who wishes to object to the Settlement or to enter an appearance through counsel, may do so by the Objection Deadline, which shall be designated as sixty (60) days after the Notice Date or such other date as ordered by the Court. *See* SA ¶¶ 1.25, 5.1-5.3. Each objection must include: (i) the case name and number of the Action; (ii) the objector's full name, current address, telephone number, and email address; (iii) proof that the Settlement Class Member is a member of the Settlement Class (e.g., copy of settlement notice); (iv) an explanation of the grounds for the objection, including all citations to legal

authority and evidence supporting the objection; (v) the Settlement Class Member's signature (digital or handwritten); (vi) if the Settlement Class Member is represented by counsel, the name, contact information (address, telephone number, and email address) and state bar(s) to which counsel is admitted, as well as associated state bar numbers, of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; (vii) copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (viii) the signature (digital or handwritten) of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; (ix) whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (x) a list, including case name, court, and docket number of all other cases in which the objector and the objector's counsel has filed an objection to any proposed class action settlement in the past five years; and (xi) a statement indicating whether the objector intends to appear at the Final Approval Hearing, and if so, whether personally or through Objecting Attorneys who file an appearance with the Court in accordance with the Court's Rules. *Id.* ¶ 5.2.

### E. Service Awards and Attorneys' Fees and Costs.

The Settlement Agreement permits Class Counsel to request approval of a Service Award of $2,500.00 for each Plaintiff, totaling $5,000.00, which recognizes their efforts and commitment on behalf of the Settlement Class. SA ¶ 10.5. Class Counsel will move for approval of an award of attorneys' fees not to exceed 25% of the Settlement Fund ($756,968.61) and reasonable litigation expenses. *Id.* ¶ 10.1. Class Counsel shall file a Motion for Attorneys' Fees and Expenses and for approval of Service Awards for the Class Representatives at least fourteen Days prior to the Objection Deadline and Opt-Out deadline. *Id.* ¶ 10.2. The Parties did *not* discuss or agree to any request for or payment of attorneys' fees, costs, or expenses until after they agreed on all material terms of relief to the Settlement Class. *See* Almeida Decl. ¶ 76. Defendant retains the right to comment on and/or object to any Motion for Attorneys' Fees and Expenses and for approval of Service Awards for the Class Representatives. SA ¶ 10.3.

**IV.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CONDITIONAL CLASS CERTIFICATION AT THE SETTLEMENT STAGE.**

As the Court previously found, conditional class certification is appropriate. As Settlement Subclass 1 and Settlement Subclass 2 remain the same, and former Settlement Subclass 3 has been removed from the revised Settlement Agreement, the Court should  grant conditional class certification again. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is there be no trial," but must still ensure satisfaction with other Rule 23 requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class satisfies each of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3) (predominance and superiority).

**A.  All Rule 23(a) requirements remain satisfied.**

**1.  The number of Settlement Class Members satisfy numerosity.**

The numerosity requirement is met where the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'" *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016). The Settlement Class here is sufficiently numerous because the proposed Class consists of approximately 171,915 Settlement Subclass 1 Members and 907,737 Settlement Subclass 2 Members. *See* Almeida Decl. ¶¶ 44-45. This far exceeds numerosity's minimum requirements. *See also* Dkt. No. 85 at 5.

**2.  There are questions of law and fact common to the Settlement Class.**

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 428 (D. Ariz. 2013). "Commonality exists where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class.'" *Fleming v. Impax Laby's Inc.*, 2021 WL 5447008, at *6 (N.D. Cal. Nov. 22, 2021) (cleaned up). As long as "there is even a single common question, a would-be class can satisfy the commonality requirement of Rule

23(a)(2).' *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (cleaned up).

Here, numerous questions of law and fact will determine LifeStance's liability to the Settlement Class. In particular, LifeStance's alleged violations of privacy statutes and laws arise from its alleged common installation of third-party pixels and tracking technologies. Each of the Settlement Class Members share the common, class-wide question of whether and to what extent Defendant disclosed their personally identifiable information and protected health information through the tracking technologies on its Website. Common evidence dictates the resolution of every Settlement Class Member's claim. *See also Doe v. Virginia Mason Med. Ctr.*, 2021 WL 12295937, at *1 (Wash. Super. Sep. 28, 2021) ("*Virginia Mason II*"). The same reasoning applies here. *See also* Dkt. No. 85 at 5.

### 3. The Class Representatives' claims are typical of Class Members' claims.

The claims of the Class Representatives are typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (cleaned up). The requirement is undemanding, requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class. *Wolin*, 617 F.3d at 1175.

Here, Plaintiffs' claims are typical of the Settlement Class because they arise from the same event—the alleged installation of pixels and tracking technologies on common website pages—and are based on the same legal theories and causes of action. Plaintiffs' and Settlement Class Members' injuries are also all connected to the same alleged conduct—the Pixel Installation. Thus, because Plaintiffs' claims arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and [their] claims were based on the same legal theory," *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (cleaned up). Accordingly, Plaintiffs' claims are typical. *See also* Dkt. No. 85 at 5.

### 4.   The proposed Class Representatives will adequately protect the interests of the Settlement Class.

Finally, named plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)). Here, Plaintiffs do not have any interests antagonistic to other Settlement Class Members and have retained lawyers who are abundantly qualified and experienced in class actions generally and in data privacy cases concerning tracking technologies specifically. *See* Almeida Decl. ¶¶ 34-39. Accordingly, the requirement is met. *See also* Dkt. No. 85 at 5-6.

### B.   All Rule 23(b)(3) requirements remain satisfied.

After establishing the Rule 23(a) requirements, plaintiffs must show the proposed class satisfies at least one subsection of Rule 23(b). *See* Fed. R. Civ. P. 23(b); *see also Wolin*, 617 F.3d at 1172. Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement satisfies these requirements.

### 1.   Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

Here, there are common questions of law and fact pertaining to Plaintiffs' alleged statutory and common law privacy claims as well as other alleged statutory violations. In other

words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Settlement Class Members. All of the issues related to the alleged privacy claims and statutory violations from the Pixel Installation can be resolved on a class-wide basis. First, there is the common question of whether the alleged communications and information that were transmitted as a result of the Pixel Installation were private or confidential information. Second, there are common questions concerning whether the Settlement Class should have had an expectation of privacy in interacting with the websites at issue. These common issues overwhelmingly predominate over any remaining individualized issues. *See, e.g.*, *Virginia Mason II*, 2021 WL 12295937, at *1; *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *6-16 (N.D. Cal. Nov. 26, 2024) (certifying a class of customers whose information was captured by "session replay" technology which operates in a way similar to Meta Pixels and other Tracking Tools, finding predominance inquiry satisfied); *Jancik v. WebMD LLC*, 2025 WL 560705, at *10 (N.D. Ga. Feb. 20, 2025) (granting motion for class certification in a class action alleging WebMD disclosed user data through the Meta Pixel, finding that the same issues would predominate each class member's claim).

### 2. A class action is superior for fair and efficient adjudication of the Action.

A court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s non-exclusive factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Litigating the same claims of hundreds of thousands of Class Members and requiring presentation of the same evidence and expert opinions each time is inefficient. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments in courts throughout the nation, where thousands of website users are at issue, and therefore will promote judicial economy and efficiency. Additionally,

Settlement Class Members are individuals whose damages may be small, but the costs to achieve recovery would be large. The awards of these Settlement Class Members would not justify the high costs of individually pursuing their claims. Finally, the class claims are able to efficiently be managed through common discovery and claims analysis. Because class treatment is superior to individual litigation, superiority is satisfied.

As all requisite elements of Rule 23(a) and (b)(3) are satisfied, class certification for settlement is appropriate. *See also* Dkt. No. 85 at 6.

## V.    THE PROPOSED SETTLEMENT IS A FAIR, ADEQUATE, AND REASONABLE COMPROMISE OF FACTUAL AND LEGAL ISSUES.

Settlement is strongly favored, "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Wood v. Ionatron, Inc*., 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) ("In the context of a class action, the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest") (cleaned up). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims.

Parties settling a class action must seek a court's approval of the settlement. *See* Fed. R. Civ. P. 23(e). That approval can only issue "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 127 (9th Cir. 1998); *In re Apollo Grp. Inc. Sec. Litig*., 2012 WL 1378677, at *1 (D. Ariz. Apr. 20, 2012). Review of a proposed class action settlement has two stages. *Smothers v. NorthStar Alarm Servs., LLC*, 2020 WL 1532058, at *4 (E.D. Cal. Mar. 31, 2020). First, "the court conducts a preliminary fairness analysis and, if necessary, a preliminary class certification analysis." *Id.* (collecting cases). Second, after all Class Members "are notified of the certification and proposed settlement, the court holds a final fairness hearing where it revisits class certification and determines whether to approve the settlement." *Id.* (collecting cases).

Under Rule 23(e)(1)(B), preliminary approval of a class action settlement turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, provides that a proposed class settlement may be approved "only on finding that it is fair, reasonable, and adequate" after considering the following factors: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). In addition, courts in the Ninth Circuit also consider:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) (discussing the *Hanlon* factors). The Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits only if the action proceeds. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").

As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2) as well as the applicable Ninth Circuit factors.

### A. Plaintiffs and Class Counsel have adequately represented the Class.

The adequacy inquiry, as required by Rule 23(e)(2)(A), turns on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs and Class Counsel have adequately represented the Class throughout the entirety of this Action.

The Class Representatives have adequately represented the Settlement Class. Plaintiffs were engaged by counsel to assist in pre-suit investigation, provided all necessary information, reviewed and approved the allegations of various pleadings, and reviewed and approved the terms of the Settlement. *See* Almeida Decl. ¶¶ 32-33; Declaration of Hart L. Robinovitch in support of Plaintiff's Motion for Preliminary Approval or Proposed Class Action Settlement, Dkt. No. 80 ("Robinovitch Decl.") ¶¶ 24-26. They have taken their duties to act as fiduciaries to the Class seriously and cooperated in all respects. Plaintiffs' claims are also typical of and coextensive with the claims of the Class, and they have no antagonistic interests. Plaintiffs' "interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members." *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019).

Moreover, Class Counsel has diligently prosecuted this Action by, *inter alia*, conducting an extensive factual investigation prior to and in the course of preparing the Original Complaint and Amended Complaint; preparing an opposition to Defendant's motions to dismiss; engaging in formal and informal discovery to obtain information necessary to negotiate the settlement terms; reviewing confidential data produced by Defendants pursuant to a Federal Rule of Evidence 408 agreement; and presenting and resolving related disputes with the mediator. *See, e.g.*, Almeida Decl. ¶¶ 22-31; Robinovitch Decl. ¶¶ 23-25. These actions, and others, undertaken by Class Counsel demonstrate their adequacy. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding class settlement procedurally fair where lead counsel "vigorously litigated th[e] action"). The substantial monetary and Injunctive Relief Benefits secured for Settlement Class Members is further evidence of adequate representation. Accordingly, the Class Representatives and proposed Class Counsel have adequately represented the Class, and this factor weighs in favor of preliminary approval.

### B. The Settlement was negotiated at arm's length.

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the product of arms-length negotiations. *See, e.g.*, *In*

*re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at \*2 ("[T]here is no evidence that there has been anything other than a genuine arms-length negotiation in this case following mediation where the parties reached an agreement on the settlement"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*, 2019 WL 2077847, at \*1 ("[B]oth sides engaged in a series of intensive, arm's-length negotiations before they reached an agreement in principle to settle."). The use of an experienced mediator is an "important factor." *In re Banc of Calif. Sec. Litig.*, 2019 WL 6605884, at \*2 (C.D. Cal. Dec. 4, 2019); *see also In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at \*13 (N.D. Cal. Mar. 31, 2010) ("[A mediator's] participation weighs considerably against any inference of a collusive settlement.").

The proposed Settlement was negotiated at arm's length and only reached after the Parties engaged in a protracted mediation process with Judge Segal. *See* Almeida Decl. ¶¶ 15-21, 40-42. This process included detailed written submissions, in-person mediation, and follow-up conferences—the totality of which resulted in the above-described settlement terms through a mediator's proposal. *Id*. ¶¶ 16-21. The revised Settlement Agreement was a further product of arms' length negotiations after the Court's analysis of the initial settlement agreement. *Id*. ¶¶ 40-42. Thus, the proposed Settlement was "the product of serious, informed, and noncollusive negotiations." *See In re Solara Med. Supplies Data Breach Litig.*, 2022 WL 1174102, at \*6 (S.D. Cal. Apr. 20, 2022).

### C. The Settlement provides significant relief for the Class representing a fair, adequate, and reasonable compromise of disputed factual and legal issues.

As described below, the benefits provided under the Settlement to resolve risky and uncertain claims are fair, adequate, and reasonable for the Settlement Class Members.

### 1. The costs, risks, and delay of further litigation.

The proposed Settlement provides more than adequate relief to the Class and satisfies Rule 23(e)(2)(C)(i) and the Ninth Circuit factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation." *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e)(2)(C)(i). The monetary relief and Injunctive Relief Benefits secured provide significant, immediate, and certain benefit to the Class, especially considering the

costs, risks, and delay posed by continued litigation. *See, e.g.*, *Salazar v. Midwest Serv. Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (finding a "[s]ettlement [a]greement's elimination of risk, delay, and further expenses weighs in favor of approval.").

While Plaintiffs remain confident in their ability to prove the claims alleged in the Amended Complaint, they are also cognizant of the risks that pixel-tracking actions under the ECPA and other privacy laws pose to plaintiffs.[9] Just recently, the Ninth Circuit affirmed the dismissal in one privacy-tracking cases while reversing the dismissal of another. *Compare Gutierrez v. Converse, Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming dismissal of CIPA claim), *with Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) (reversing dismissal of CIPA claim); *see also Doe v Eating Recovery Ctr. LLC*, 2025 WL 2971090 (N.D. Cal., Oct. 17, 2025) (dismissing CIPA claim); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) (upholding wiretap claims).

Moreover, to obtain any recovery for the Class as a whole, Plaintiffs would still need to prevail at class certification, summary judgment, pretrial motions, trial, and subsequent appeals, a process that would likely extend several years. While certain courts have certified privacy law cases for class action treatment, that outcome is not guaranteed. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) (granting class certification). Settlement is favored here where the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017), *aff'd* 881 F.3d 1111 (9th Cir. 2018).

---

[9] While courts have issued decisions upholding ECPA, CIPA, and other claims against healthcare providers who placed tracking pixels on their websites, certain decisions also go the other way. *See, e.g.*, *Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) (denying motion to dismiss in part); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) and denying motion to dismiss invasion of privacy, breach of implied contract, unjust enrichment, negligence & ECPA causes of action); *McCulley v Banner Health*, 23-cv-00985 (May 10, 2024, D. Ariz.) (denying motion to dismiss, in part); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) (same). *But see In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023).

## 2.  The value of the Settlement compared to the value of the case.

As Class Counsel have litigated and settled several pixel cases, they have the benefit of considerable experience in valuing this case not only considering the potential damages at issue but also as compared to the increasing challenges to a litigated verdict including, but not limited to, class certification, summary judgment, trial and possible appeals. "While courts do not need a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action,' courts have more than once denied motions for approval where the plaintiffs provided no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims." *Taylor v. Populus Grp., LLC*, 2022 WL 3045366, at *7 (S.D. Cal. Aug. 2, 2022) (granting preliminary approval but requiring "the parties to provide, prior to or at the Fairness Hearing, the expected recovery balanced against the value of the settlement offer") (cleaned up); *see also* Dkt No. 85 at 8 (collecting cases).

Here, the Court allowed the following claims to proceed past the motion to dismiss: (i) ECPA, (ii) California Invasion of Privacy Act ("CIPA"), (iii) California's Unfair Competition Law ("UCL"), (iv) Arizona Consumer Fraud Act ("AZCFA"), (v) New York General Business Law § 349 ("NYGBL"), and (vi) California Confidentiality of Medical Information Act ("CMIA"). *See* Dkt. No. 56 at 9-19. In negotiating this Settlement and agreeing to the amounts therein, Class Counsel considered the damages and recovery available under the various claims that survived the motion to dismiss. *See* Almeida Decl. ¶¶ 51-70.

Specifically, under the ECPA, Defendant's alleged conduct could have resulted in "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000" as well as "reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C § 2520(b) & (c). CIPA authorizes damages of $5,000 per violation or three times actual damages, whichever is greater. *See* Cal. Penal Code § 637.2(a). The UCL, by contrast, provides only equitable remedies—primarily restitution and injunctive relief—and does not permit damages or statutory penalties. *See Jones v. Bank of Am., N.A.*, 2020 WL 4819699, at *7 (C.D. Cal. Mar. 16, 2020). The AZCFA allows recovery of actual damages.

*See Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992). NYGBL § 349 authorizes actual damages or statutory damages of $50 per violation. N.Y. Gen. Bus. Law § 349(h). Finally, the CMIA permits statutory damages of $1,000 per patient for negligent violations and up to $3,000–$25,000 per violation for willful or knowing disclosures of medical information. Cal. Civ. Code § 56.36(b).

However, to date, no court has awarded such statutory damages directly in a pixel-tracking case. *But see Frasco v. Flo Health, Inc*., Dkt. No. 756 (N.D. Cal. 2025) (CIPA jury verdict without damages against Meta). Establishing entitlement to statutory damages under the ECPA, CIPA, and CMIA would have required Plaintiffs to overcome numerous challenges regarding intent and causation, among other things. In particular, Plaintiffs would have been required to prove that Defendant knowingly and intentionally intercepted or disclosed contents of communications within the meaning of the ECPA and CIPA. Likewise, CMIA statutory damages would have required Plaintiffs to show not only a disclosure of medical information, but that the disclosure was negligent, willful, or knowing, another heavily fact-driven and expert-dependent inquiry.

In addition, success under the consumer-protection statutes, the UCL, AZCFA, and NYGBL § 349, posed their own hurdles. The UCL affords only equitable relief; it provides no damages or statutory penalties. As a result, even a complete UCL victory would not have yielded monetary recovery for Settlement Class Members. Claims under the AZCFA and NYGBL § 349 require proof of actual damages, typically through expert testimony establishing economic loss attributable to the alleged conduct. Demonstrating a measurable economic loss on a classwide basis would have necessitated complex damages modeling, expert analyses of data transmissions, and extensive discovery into individualized consumer behavior, each of which would have introduced significant litigation risk.

Here, although the statutes at issue provide for potentially significant remedies in the abstract, obtaining those remedies would have been *far* from guaranteed and often left to the discretion of the court. The legal uncertainty, factual complexity, and expert-driven nature of these claims made the likelihood of securing the full range of statutory or actual damages risky.

These risks informed the Parties' assessment of litigation exposure and underscore the substantial value of the Settlement achieved here. *See* Almeida Decl. ¶¶ 51-59.

The decision to settle the case for the establishment of a $3 million non-reversionary, common fund is buttressed by consideration of the numerous comparable cases challenging the use of pixel tracking on healthcare companies' websites. *See id.* ¶¶ 67-68. While litigation involving the alleged use of tracking technologies is relatively new, comparative benchmarks indicate that the value of this action is substantial. Several similar cases with generally comparable class sizes settled for amounts in the range of approximately $4 to $6 per class member. The following chart identifies similar settlements, including the settlement amount, class size, and per class member recovery:[10]

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|-----------|-------------|-------------------|------------|------------|
| *John v. Froedtert Health, Inc.* | No. 23-CV-1935 (Wis. Cir. Ct. Milwaukee Cnty.) | $2,000,000 | 459,044 | $4.35 |
| *In re Advocate Aurora Health Pixel Litig.* | No. 22-CV-1253 (E.D. Wis.) | $12,225,000 | 2,540,567 | $4.81 |
| *In re Novant Health, Inc.* | No. 1:22-cv-00697 (M.D.N.C.) | $6,660,000 | 1,361,159 | $4.85 |
| *Doe v. Partners Healthcare System, Inc.* | No. 19-1651 (Mass. Super.) | $18,400,000 | 3,000,000 | $6.13 |
| *In re Group Health Plan Litig.* | No. 23-cv-267 (D. Minn) | $6,000,000 | 978,305 | $6.13 |
| *Reedy v. Everlywell, Inc.* | No. 24-cv-2713 (N.D. Ill.) | Non-Sensitive Test Subclass: $2,360,000.00<br><br>Sensitive Test Subclass: $2,640,000.00 | Non-Sensitive Test Subclass: 1,340,000<br><br>Sensitive | Non-Sensitive Test Subclass: $1.76<br><br>Sensitive |

---

[10] Notably, the court in *Kurowski v. Rush Sys. for Health,* approved a settlement that provided only injunctive relief to the class. *See* No. 22-cv-5380 (N.D. Ill., Dec. 17, 2024) (granting final approval to class action settlement providing only injunctive relief & stating "Pursuant to the Settlement Agreement, ¶ 2.1, and for a period of two years, Rush shall remove any remaining vestiges of the following tracking technologies on Rush's Websites….").

| | | | Test Subclass: 660,000 | Test Subclass: $4 |
|---|---|---|---|---|

In this case, the Settlement Subclass 1 Fund equates to $7 per person prior to any pro rata allocation based on claims rate. This amount exceeds the per class member recovery in the cases identified above. In part, this number is higher because LifeStance provides mental health services, not just general health services. Similar to the tiered settlement structure in *Reedy*, the Settlement Subclass 2 Fund here equates to $1.885 per person prior to any pro rata allocation based on claims rate. *Compare Reedy*, No. 24-cv-2713 (N.D. Ill.) (Per person amount for Non-Sensitive Test Subclass $1.76).

Further, while exact pro rata distributions for each Approved Claim cannot be calculated until after the claims process is closer to final, comparable settlements offer a reliable point of reference for the range of expected actual payments. *See, e.g.*, *Kane v. Univ. of Rochester*, No. 23-cv-06027-MJP (W.D.N.Y.), Dkt. Nos. 56-1, 64 (Claims rate of 8.03% and pro rata payment of $33.81 per valid claim); *Smith v. Loyola Univ. Med. Ctr.*, No. 23-cv-15828 (N.D. Ill.), Dkt. Nos. 84, 86 (Claims rate of 14.48% and pro rata payment of $33.32 per valid claim); *Cooper v. Mount Sinai Health Sys., Inc.*, No. 23-cv-09485 (S.D.N.Y.), Dkt. Nos. 73, 79 (Claims rate of 3.17% and pro rata payment of $80.00 per valid claim); *Reedy v. Everlywell, Inc.*, No. 23-cv-04539 (N.D. Ill.), Dkt. Nos. 36, 38 (Claims rate of 3.18% and pro rata payments of $35.52 or $75.91 per valid claim, depending on collected data sensitivity).

In sum, the Settlement here balances the risks, costs, and delay inherent in complex cases. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial and appeals, the Settlement is in the Class's best interest as it secures Settlement benefits for those who wish to receive them, while eliminating the risk of a complete non-recovery. For those Class Member who wish to continue litigating in search of a greater recovery, the Settlement provides opt-out rights and a manner to do so.

### 3. The proposed method for distributing relief is effective and fair.

The Claims process is also effective and includes a standard Claim Form and allocation

plan described in Section 2 of the Settlement Agreement. The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc*., 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013).

Here, the Claim Form is necessary to confirm the Class Member's current address and payment method information. The Settlement also provides for a thorough claim review process by the Settlement Administrator to maintain the integrity of the Settlement by confirming that only valid claims are accepted and a mechanism for determining how deficiencies are addressed. SA ¶¶ 7.2-7.3. To equitably allocate the Settlement benefits among Class Members according to the strength of a Claim, the Settlement Class is divided into two subclasses. SA ¶ 2.2. The allocation plan governs how the benefits will be distributed to Class Members.

Specifically, Settlement Subclass 1 Members—whose claims are comparatively stronger because they booked appointments through LifeStance's Website and therefore may have alleged that they had their individually identifiable health information ("IIHI") collected and disclosed—will share pro rata in the approximately $1.2 million Settlement Subclass 1 Fund, provided they submit a timely Claim Form. SA ¶ 1.42. Settlement Subclass 2 Members—who did not book appointments online and thus possess comparatively weaker claims—will share pro rata in the separate approximately $1.8 million Settlement Subclass 2 Fund, provided they also submit a timely Claim Form. SA ¶ 1.43.

Each Settlement Subclass 1 or Subclass 2 Member with an Approved Claim will receive an equal pro rata share of their respective fund (i.e., $1.2 million or $1.8 million, less Settlement

Administration Costs capped at $250,000 and any Court-approved fees or costs, with attorneys' fees capped at 25%). Because the most significant alleged injury arises when a user first submits appointment-booking information on LifeStance's Website, the claims of Subclass 1 Members carry greater statutory-damages exposure and litigation value. Subclass 2 Members' claims, while still compensable, are less robust because they did not provide appointment-booking information online. Nonetheless, the Settlement ensures that both groups receive meaningful monetary relief proportionate to the relative strength of their claims.

The monetary funds will be exhausted through the *pro rata* distributions. SA ¶ 2.2. If any checks are uncashed or residual funds otherwise result, the money will be distributed to appropriate *cy pres* beneficiaries that support consumer's privacy rights and satisfy the standard in *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012). And all Settlement Class Members will receive Injunctive Relief Benefits, which ensures that if they visit Defendant's Website again over the next five years there will be no active third-party tracking pixels, other than those compliant with the Health Insurance Portability and Accountability Act. SA ¶ 1.22; *see also Campbell v. Facebook*, 951 F.3d 1106, 1111, 1123-24 (9th Cir., 2020) (approving class action settlement in ECPA and CIPA action where "Facebook acknowledged in the settlement agreement that it had already made several changes to the practices challenged in this action, and it agreed to add a disclosure to a Help Center page on its website for a year.").[11]

Ultimately, the allocation plan is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members within a subclass equitably, as required by Rule 23(e)(2)(D). Members of each subclass are subject to the same formula for distribution of the Settlement within their subclass as other members of the same subclass. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("The Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all

---

[11]   Injunctive relief secured in the midst of pending class action litigation has been found to be a valuable benefit for class members which support claims for attorneys' fees under a catalyst theory. *See e.g.*, *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 578 (2004).

Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").

### 4. The views of Class Counsel.

Another relevant factor is the experience of counsel who determined that settlement was appropriate in the matter. *Wood*, 2009 WL 10673479, at *4. The law firms involved in this case have considerable experience in the applicable area of law and in handling similar actions and support the Settlement as a reasonable compromise of disputed issues. Almeida Decl. ¶¶ 34-39; Robinovitch Decl. ¶¶ 12, 26, 41. Thus, this factor supports approval.

### 5. Extent of discovery and the stage of the proceedings.

The Parties exchanged formal initial disclosures and propounded informal discovery leading up to the mediation. Almeida Decl. ¶ 16. This process and exchange of information allowed Class Counsel to make an informed decision as to the reasonableness of the Settlement. Further confirmatory discovery regarding other information exchanged will be completed to ensure that the Settlement is based on a proper factual record prior to final approval. SA ¶ 12.7.

### 6. Absence of evidence of collusion.

The Ninth Circuit has held that "[b]efore approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties[.]" *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985). Here, Settlement negotiations were conducted at arm's length with the assistance of a well-respected, neutral mediator. *See* Almeida Decl. ¶ 16; *see also Wood*, 2009 WL 10673479, at *4 (stating that "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citation omitted).

### 7. The relief provided in the Settlement is adequate taking into account all agreements related to the Settlement.

The agreements required to be identified under Rule 23(e)(3) treat the Settlement Class fairly. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding that the absence of clear sailing fee provisions and no reversion of funds to the

defendants support approving the settlement). Following the mediation, the Parties entered into a Term Sheet concerning their agreement in principle, which was formally memorialized in the initial Settlement Agreement. *See* Almeida Decl. ¶¶ 17-18. After the Court denied preliminary approval, the Parties revised this Settlement Agreement now before the Court. No other agreements exist. No part of the Settlement reverts to Defendant, and the Settlement is not contingent on any fee award to Class Counsel. The agreement treats the Settlement Class fairly and supports a finding that the relief provided by the Settlement is adequate.

### D. The Notice plan is reasonable and satisfies due process.

The content of the proposed Notice forms here are all "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Proposed "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (cleaned up); *see also Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (approving class settlement and notice plan).

The proposed Notice and Settlement Administration process is effective and in accord with Rule 23(e)(2)(C)(ii) and due process requirements. *See generally* Weisbrot Decl. The Notice plan provides for direct email Notice to all those whom Defendant can identify with reasonable effort. *See* SA ¶ 4.1. The Notice plan also includes reminder notice. *Id.* This direct Notice plan is sufficient. The Notice plan will be supplemented by a Settlement-specific website where key documents will be posted. *See* SA ¶ 4.1(e). The Notice will provide links to the Settlement Website where the Claim Form can be downloaded and submitted. SA ¶ 4.1(b). The Claim Form is relatively straightforward and able to be completed in a few minutes, providing the Settlement Administrator the material information it needs to process claims—Class Members current address and payment information. *See* SA ¶¶ 1.6, Exhs. A & B.

Finally, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed Notice satisfy this requirement, as they inform Class Members of the fees to be sought. Class Counsel's fee petition will also be filed prior to the objection deadline, and posted on the Settlement Website, allowing the class the opportunity to comment. SA ¶ 10.2. For these reasons, the proposed notice plan is reasonable and should be approved. Likewise, the Court should approve Angeion as the Settlement Administrator.

## VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CO-CLASS COUNSEL AND PLAINTIFFS AS CLASS REPRESENTATIVES.

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1) & (g)(4). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Proposed Class Counsel has extensive experience prosecuting consumer class actions in general and tracking technologies cases in particular. *See* Almeida Decl. ¶¶ 34-39. As a result of their zealous efforts in this Action, proposed Class Counsel have secured substantial relief for the Settlement Class Members. Thus, the Court should appoint Hart L. Robinovitch and Ryan J. Ellersick of Zimmerman Reed LLP and David S. Almeida and Britany A. Kabakov of Almedia Law Group, LLC as Class Counsel. In addition, Ms. Strong and Ms. Yick should be appointed Class Representatives due the typicality of their claims and efforts to assist Class Counsel in securing the relief for the Settlement Clas under the Settlement.

## VII.   CONCLUSION

For these reasons, Settlement Class Counsel respectfully ask the Court to enter an Order:

(1) certifying the Settlement Class for purposes of settlement;

(2) appointing Plaintiffs Montana Strong and Debra Yick as Class Representatives;

(3) appointing David S. Almeida and Britany A. Kabakov of Almeida Law Group

1  LLC and Hart L. Robinovitch and Ryan J. Ellersick of Zimmerman Reed LLP as
2  Settlement Class Counsel;

3      (4) granting preliminary approval of the proposed Settlement;

4      (5) approving the proposed form and manner of Notice to the Settlement Class;

5      (6) appointing Angeion as Settlement Administrator;

6      (7) directing that Notice to the Settlement Class be disseminated by the Settlement
7  Administrator in the manner described in the Settlement Agreement;

8      (8) establishing deadlines for Settlement Class Members to request exclusion from
9  or file objections to the Settlement; and

10     (9) setting the proposed schedule for completion of further settlement proceedings,
11 including scheduling the Final Approval Hearing.

12 Dated: December 3, 2025          Respectfully submitted,

13                        By: *s/ David S. Almeida*

14                          David S. Almeida*
                         Britany A. Kabakov*
15                          **ALMEIDA LAW GROUP LLC**
                         849 W. Webster Avenue
16                          Chicago, Illinois 60614
                         Tel: (708) 529-5418
17                          david@almeidalawgroup.com
                         britany@almeidalawgroup.com

18                          **ZIMMERMAN REED LLP**
19                          Hart L. Robinovitch
                         Ryan J. Ellersick
20                          14648 N. Scottsdale Road, Suite 130
                         Scottsdale, AZ 85254
21                          Tel: (480) 348-6400
                         Facsimile: (480) 348-6415
22                          hart.robinovitch@zimmreed.com
                         ryan.ellersick@zimmreed.com

23                          * *Pro hac vice* granted

24                          *Attorneys for Plaintiffs & the Classes*

25

26

27

28